**Application of John P. GLASS.**
**Patent Appeal No. 8787.**

United States Court of Customs
and Patent Appeals.
Feb. 22, 1973.

John F. A. Earley, Philadelphia, Pa., James W. Dent, Washington, D. C., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 30, 31, 34, 35, 39, 44, 45, 47–50 and 52–57 of appellant's application[1] entitled "Method and Apparatus for Making Fibers." We affirm in part and reverse in part.

Appellant's invention relates to an apparatus for making crystalline fibers from materials such as silica, aluminum oxide and carbon. Figure 1 of the application is reproduced below:

FIG. 1.

The apparatus of the drawing comprises a chamber 11 in which a vapor of the fiber-forming material is generated and maintained. Because of the nature of the suitable materials, this requires high temperatures. In one embodiment, a vaporizer 33 is used to generate the vapor, and heating elements 15 within

---

1. Serial No. 480,018 filed August 19, 1965.

the chamber walls are used to obtain a temperature within the chamber sufficient to maintain the vapor state.

The fibers are formed by crystallization of the material employed directly from the vapor state. The crystallization takes place at the ends of fibers 23 as they are withdrawn from the chamber through orifice 21 by reel 26. In order for crystallization to occur, a cool zone 19 is established within the chamber. This is accomplished by directing a current of cool gas 18 by means of conduits 37 into the chamber through the orifice.

When the fibers are derived from carbon, vaporizer 33 need not be used. Instead, a hydrocarbon gas such as methane or acetylene can be admitted directly to the chamber, for example, through conduit 37. The high temperature within the chamber cracks the gas into hydrogen and carbon. The carbon becomes the source material for the fibers.

The fiber ends are fanned out by impressing an electrostatic charge upon them. This allows all the fiber ends to be individually exposed to the vapor of crystallizable material within the cool zone. Electrical circuit 24 is used to measure the electrostatic capacitance of the fibers to ground and operate reel 26 to withdraw the fibers from the chamber at a controlled rate.

Claims 30, 34 and 35, reproduced below, are representative of those on appeal:

30. In apparatus for making fibers, a chamber, means for forming a plurality of elongated fibers by condensing fibrous crystals from a vapor stage of fiber-producing material in the chamber, and means for electrostatically charging the fibers to fan out the ends of the fibers so that the ends are separated and individually exposed to vapor.

34. In apparatus for making fibers, a chamber having growing fibers having ends in the chamber,

means for applying sufficient electrostatic charge to the fibers to keep their ends separated, means for gathering the fibers together at a location spaced away from the fiber ends to form a strand, and means for withdrawing the strand from the chamber.

35. In apparatus for making fibers, apparatus for controlling the length of the fibers comprising means for applying an electrostatic charge to growing fibers in a growing zone, and means for withdrawing the fibers from the growing zone when the value of the electrostatic charge reaches a predetermined level.

All the claims stand rejected under 35 U.S.C. § 103 as being obvious in view of a single prior art reference, a patent to Childs.[2] Childs discloses an apparatus for spinning a sliver of rayon. Figure 1 of that apparatus is shown below:

Fig. 1

The apparatus provides a chamber 1 into which a heated solution of rayon in acetone is injected through spinneret 4. As the solution emerges from the spinneret, it enters an electrostatic field which serves to separate the rayon as fine filaments from the solution. The

2. U. S. No. 3,338,570, issued January 4, 1944.

electrodes that create the field are the spinneret itself and electrode 17. Spinning solution is charged to the spinneret from supply tank 11 by means of conduit 12, control valve 13, gear pump 14 and filter 5. The filter is surrounded by a heating jacket to warm the spinning solution prior to its injection into the chamber.

Warm air enters the chamber at 2 and exits at 3, carrying with it the separated solvent. The fine filaments of rayon are attracted to the tail of the sliver S as it is withdrawn from the chamber over guide roll 19.

In sustaining the examiner, the board discussed claim 30 only. Although this rejection was nominally sustained under 35 U.S.C. § 103, we think it clear that the board regarded claim 30 as being fully met by Childs within the meaning of 35 U.S.C. § 102. The board summarized its position as follows:

> We think the situation here is one in which the claims before us are only nominally in apparatus form equivalent to claiming any and all means for carrying out the portions of the process to which they allude, and thus are nothing more than a paraphrase of the method, similar to the situation presented in In re Taylor, * * * [52 App.D.C. 249, 285 F. 983 (D.C. Cir. 1923)]. *Certainly they present no structural differences over the apparatus of Childs.* [Emphasis added.]

The board equated the chamber, fiber-forming means, and electrostatic charging means of claim 30 with Childs' chamber, spinneret and associated charging means, and electrodes, respectively.

■ We disagree with the board's decision relative to claim 30 whether it be construed under § 102 or § 103. In particular, we cannot agree that the spinneret and associated charging means of Childs are the equivalent of the claimed element " * * * means for forming a plurality of elongated fibers by condensing fibrous crystals from a vapor

stage of fiber-producing material * * *."

The board rationalized its equation of Childs' spinneret to the fiber-forming means of the claim in the following manner:

> * * * the "means for forming a plurality of elongated fibers" is met by spinneret 4 of this patent operating in conjunction with its associated charging means. Patentee solidifies his material to fibers from a liquid phase and not "by condensing fibrous crystals from a vapor stage of fiber producing material," but we have been given no reason why his fiber forming means cannot operate in this way, depending upon the proper selection of materials and process conditions. It appears, in fact, that the present disclosure provides the fiber-forming vapors by means of an only diagrammatically illustrated "vaporizer 33," which apparently may be heated, or by a conduit 37 which projects hydrocarbons through the orifice 21 onto the chamber. In the former case, the nature of the vaporized material and of the "condensing" action are not disclosed; in the latter case, the hydrocarbon is decomposed to deposit carbon. It is apparent from this and the exemplary materials of page 9, lines 3–4, that the concept of fiber formation "by condensing fibrous crystals from a vapor stage of fiber-producing material" is an extremely extensive one and that any and all means for accomplishing it could hardly exclude the fiber-forming means in Childs.

We cannot agree with this interpretation of the claim language. The disclosure and the claim itself make it clear that the "condensing" action referred to by the board involves crystallization of the fiber from material in the vapor state. The exemplary materials from which crystalline fibers can be made are silica, aluminum oxide and carbon. The features common to each of these are that they are high-melting inorganic solids. It is our view that the board en-

gaged in unwarranted speculation when it concluded that Childs' apparatus could form fibers in the manner claimed if a proper selection of material and process conditions was made.

At the very least, Childs would seem to have to describe elements which would be capable of converting a vapor of some material itself capable of forming a crystalline fiber into such a fiber even though those elements are disclosed as having other functions. From our analysis of Childs we think that the apparatus disclosed there is incapable of forming crystalline fibers by vapor condensation from inorganic materials such as silica, aluminum oxide or carbon. Furthermore, from the record before us we can find no basis for the board's conclusion that any material the Childs' apparatus can handle is capable of forming a crystalline fiber. Certainly neither the board nor the solicitor has suggested the material or the conditions which would be employed in the Childs' apparatus to make crystalline fibers. Unsupported speculation as to the qualities of that apparatus can form no basis for rejecting claim 30.

We have not been persuaded by our own analysis of the reference or the arguments made that the claimed combination is an obvious one. As indicated above, we do not think that the Childs' apparatus can be used to make crystalline fibers from a vapor of fiber-forming material. Furthermore, it is our view that the use to which that apparatus is put and its apparent capabilities would not suggest to one of ordinary skill in the art obvious modifications of the apparatus which would allow it to be employed for making crystalline fibers. Such modifications as would be required are apparent only in retrospect having advantage of appellant's own disclosure.

Having concluded that appellant's claim 30 would not be obvious in view of Childs, we reverse the board's decision as to that claim. This holding also dictates reversal of the decision as to claims 31, 44, 45, 47–50 and 52–57, all of which in one way or another claim means for making crystalline fibers.

Claims 34 and 35 stand on a different footing than claim 30. Neither was discussed by the board but, as the examiner pointed out in the Examiner's Answer, they are not limited to an apparatus having means for forming crystalline fibers from a vapor state.

■ We affirm the board's decision relative to claim 34. That claim, in effect, calls for a chamber, electrostatic charging means, means for gathering the fibers and means for withdrawing the strand from the chamber. We think equivalent elements are found in Childs. Appellant has not shown that the corresponding elements in Childs do not actually possess the same characteristics as his apparatus and since he has failed to do so, we are required to affirm the rejection. In re Ludtke, 441 F.2d 660, 58 CCPA 1159 (1971).

We reverse the board's decision as to claim 35. An element in claim 35 is "means for withdrawing the fibers from the growing zone when the value of the electrostatic charge reaches a predetermined level." The specification makes it clear that this is done so as to synchronize the rate of fiber withdrawal with that of fiber formation. Childs possesses no similar element nor is there any basis to conclude that the electrostatic charge used should be related to the rate of withdrawal of the sliver. We find, therefore, no basis for the rejection under 35 U.S.C. § 103. This holding relative to claim 35 dictates reversal of the decision sustaining the rejection of claim 39 as well.

For the foregoing reason, we affirm the board's decision sustaining the rejection of claim 34 and reverse that decision as to claims 30, 31, 35, 39, 44, 45, 47–50, and 52–57.

Modified.