**Application of John P. GLASS.**

**Patent Appeal No. 9077.**

United States Court of Customs
and Patent Appeals.
Feb. 28, 1974.

John F. A. Earley, Jr., Philadelphia,
Pa., attorney of record, for appellant.

Joseph F. Nakamura, Washington, D.
C., for the Commissioner of Patents;
Jere W. Sears, Washington, D. C., of
counsel.

Before MARKEY, Chief Judge, and
RICH, BALDWIN, LANE and MILLER,
Judges.

RICH, Judge.

This appeal is from the decision of
the Patent Office Board of Appeals af-
firming the examiner's rejection of all
claims remaining in application serial
No. 664,879 filed August 31, 1967, enti-
tled "Whiskers." We affirm.

*The Invention*

The term "whiskers" is the technical
name for long, needle-like, linear crys-
tals grown artificially from the vapor
phase of such crystal-producing materi-
als as aluminum oxide, silicon nitride,

graphite, boron, sapphire, etc.[1] The appealed claims are directed to both apparatus and method. The whiskers are said to have very high strength and according to one prior art reference[2] have utility for reinforcing refractory materials. The application contains the following drawing:

The description in appellant's specification reads:

* * * there is shown a heated chamber 11 having a mixer chamber

1. See In re Glass, 474 F.2d 1015 (Cust. & Pat.App.1973) for a related invention.

2. Evans British patent 998,167.

12 which is positioned above a heated vertical cylinder 13. A precipitating zone 14 is formed within cylinder 13, and the temperature within precipitating zone 14 is hotter at the top and cooler at the bottom since a temperature gradient is maintained within precipitating zone 14 by heating means 15 which is positioned along cylinder 13.

The whisker-producing vapor is mixed in a turbulent mixer zone 16 in chamber 12, and the material to be mixed is introduced into chamber 12 through jet nozzles 17–20 which are connected to ingredient containers 23–26 by conduits 27–30 to control the flow of ingredients passing therethrough.

An electron gun 37, which may be a radioactive cobalt gun, is positioned beneath cylinder 13 and is adapted to discharge electrons into the vapor in precipitating zone 14.

A collector 38 is positioned beneath cylinder 13 for collecting the whiskers formed in precipitating zone 14.

In operation, ingredients A, B, C, and D are passed from ingredient containers 23–26 through metering valves 33–36 and conduits 27–30 and are sprayed through jet nozzles 17–20 into turbulent mixer zone 16 of chamber 12 where the ingredients are thoroughly mixed together. The mixture is then passed downwardly into heated vertical cylinder 13 and precipitating zone 14. Gradient heating means 15 provides a temperature gradient within precipitating zone 14 and forms an optimum supersaturation zone 42 somewhere within precipitating zone 14.

It is to be noted that optimum zone 42 is created within precipitating zone 14 without exactly controlling conditions of temperature, pressure and supersaturation in a selected space. The vapor itself finds the optimum zone 42 by passing through a zone which is above optimum conditions, then passing through the optimum zone 42, and then passing through a zone which is below optimum conditions.

Appellant claims the above described apparatus and the method implicit in said description in claims of varying scope and nothing would be added by setting forth typical claims, particularly in view of the ground of rejection discussed below.

*The Rejections*

The principal rejection affirmed by the board applies to all claims and is under 35 U.S.C. § 112, first paragraph.[3] It is that the claims are unsupported because the specification contains an inadequate, fatally defective disclosure in that it would not enable any person skilled in the art to practice the invention claimed. In particular, as pointed out by the examiner, appellant acknowledges that at least proper temperature, pressure, and vapor saturation conditions are necessary to precipitate a whisker from a vapor, yet none of these parameters are given in the general description and no specific example is provided. The examiner and the board both felt that appellant had also failed to comply with the "best mode" requirement of § 112, perhaps because there is no specific example. Numerous terms used are alleged to be unclear in their meaning and unexplained, such as "whisker-producing material," "optimum supersaturation," and "above" and "below" optimum supersaturation. Moreover, the examiner felt that the last two terms were used in the opposite senses to what they normally connote and were not only indefinite but confusing. He

3. § 112. Specification
[A] The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable *any person skilled in the art* to which it pertains, or with which it is most nearly connected, to make and use the same, and shall [B] set forth the best mode contemplated by the inventor of carrying out his invention. [Emphasis and bracketed letters ours.]

also found that the terms "A, B, C, and D" describing ingredients are not defined and do not refer to any particular materials. He found the intensity of the electrostatic charge, which he considered to be a matter of importance to whisker growth, if not critical, to be undisclosed. The board reversed as to the term "whisker-producing material," since it felt it would be understood by those skilled in the art, but otherwise affirmed this rejection on the ground of incomplete disclosure.

Certain claims stand rejected on the ground that they are indefinite under the second paragraph of § 112, and some claims in the same group are also rejected under § 103 on a prior art patent. We find it unnecessary to reach these rejections.

### Appellant's Arguments

Essentially, appellant contends that his specification is sufficient and that those skilled in the art would be enabled thereby to practice his invention, thus disagreeing with the opinion of the examiner that they would not be. In support of his contention, appellant introduced in his reply brief before the board, filed in response to alleged new arguments in the Examiner's Answer, copies of four patents in the crystal-growing art, to show the knowledge of the art at the time he filed. All four of these patents issued to Lexington Laboratories, Inc., Cambridge, Massachusetts.[4] Three were on the inventions of Campbell, Nos. 3,418,076, 3,449,071, and 3,449,147. The fourth was on the invention of Kingery et al., No. 3,365,316. Each of the four patents issued subsequent to appellant's filing date, but each had a filing date earlier than appellant's, so that had it been relied on by the Patent Office as prior art—which none was—it would have been available as a reference under 35 U.S.C. § 102(e). The board, which alone had these patents before it, held that they could not be accepted as showing the state of the art as of appellant's filing date since they issued thereafter and refused to consider them. Appellant says in his brief before us that they should be considered. He argues:

It would be unfair if the Patent Office were permitted to rely on these four patents as prior art, and the applicant were denied this right.

He then proceeds to quote from and to rely on them.

### OPINION

We will first dispose of the last-mentioned argument. The right of the Patent Office to rely on prior United States patents as "prior art" under § 102(e) is pursuant to the rationale of the case of Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926), which that section codified. The rationale was that the patentee of the patent in suit could not be the first inventor and have a valid patent if the invention had been described in another's patent, the application for which had been filed before the patentee's date of invention. The Court applied the "fundamental rule * * * that the patentee must be the first inventor," that is to say, the patentee of the patent there in suit. (The prior statutes from which the Court concluded one must be the first inventor to obtain a valid patent were RS 4886 and RS 4920.) Under that rationale, and as a matter of common sense, it is clear that the contents of a patent application which may be available as "prior art" under § 102(e) to show that another was the first inventor may not have been known to anyone other than the inventor, his attorney, and the Patent Office examiner, and perhaps the assignee, if there was one, until it issued as a patent. As of its filing date it does not show what is known generally to "any person skilled in the art," to quote from § 112. On the other hand, § 112 re-

---

4. At oral argument appellant's attorney said Mr. Glass had had some connection with Lexington Laboratories.

quires an applicant to so describe his invention as to enable any person skilled in the art to practice it, the purpose being to make the invention understandable to all such persons as soon as the patent issues. Sections 112 and 102(e) rest on different foundations, serve different purposes, and are not comparable. There is nothing "unfair" about the situation. The board was right in refusing to consider the patents cited by appellant and we, likewise, refuse to consider them.

■■ Appellant's attempt to use the disclosures of the four patents which issued after his filing date raises a subsidiary question: If a disclosure is insufficient as of the time it is filed, can it be made sufficient, while the application is still pending, by later publications which add to the knowledge of the art so that the disclosure, supplemented by such publications, would suffice to enable the practice of the invention? We think it cannot. The sufficiency must be judged as of the filing date. Cf. In re Argoudelis, 434 F.2d 1390, 58 CCPA 769 (1970), particularly Judge Baldwin's concurring opinion, and In re Hawkins, 486 F.2d 569 (Cust. & Pat. App.1973). 35 U.S.C. § 132 prohibits adding any "new matter" to the disclosure after filing. Moreover, the filing date becomes a date of constructive reduction to practice in determining priority of invention and this should not be the case unless at that time, without waiting for subsequent disclosures, any person skilled in the art could practice the invention from the disclosure of the application. If information to be found only in subsequent publications is needed for such enablement, it cannot be said that the disclosure in the application evidences a completed invention. We left the above-stated subsidiary question open in In re Barrett, 440 F.2d 1391, 58 CCPA 1155 (1971), see footnote 2, because decision on it was there unnecessary. It was also unnecessary to decide it in *Argoudelis*.[5] Since it is squarely raised here by appellant's contentions, we now rule that application sufficiency under § 112, first paragraph, must be judged as of its filing date. It is an applicant's obligation to supply enabling disclosure without reliance on what others *may* publish after he has filed an application on what is supposed to be a completed invention. If he cannot supply enabling information, he is not yet in a position to file.[6]

We find nothing contrary to this position in our opinion in In re Novak, 306 F.2d 917, 49 CCPA 1267 (1962), relied on by appellant. There the Patent Office and we relied on disclosures about the prior art in a Gaver et al. patent as of its U.S. filing date, which was prior to a date claimed under a parent application by the appellants. We see therein no bearing on the right of an applicant to rely on patent disclosures to show the general knowledge of the art as of any date earlier than the date the patents issued.

■ Considering the merits of the rejection for insufficiency of disclosure, we agree that it is insufficient to support either the apparatus or the method claims. It does not sufficiently teach how to use the apparatus or how to practice the method. We have quoted above almost all of the substance of the disclosure. While there is more to the specification, it never becomes more specific with respect to process details or apparatus operating conditions. The

---

5. See Janicke, "Patent Disclosure: Some Problems and Current Developments," 53 JPOS 3, 6–8 (1971).

6. Of course, while later issuing patents or publications may not be relied upon to establish that the specification is enabling under § 112, paragraph one, reference may be made to such publications to *construe* claim language and in particular to prove the definiteness of claim terminology. As we observed in In re Fisher, 427 F.2d 833, 838, 57 CCPA 1099, 1106 (1970), "were we to require that the claims speak in the language of the prior art, we would be prohibiting the use of the newer and frequently more precise language of the present art."

generality and vagueness of disclosure pervades the summary:

> To summarize, instead of trying to hold exact conditions of supersaturation [as required in the prior art], the present invention provides an optimum supersaturation zone 42 which is located somewhere within cylinder 13, it passes the whisker-producing vapor through cylinder 13 so that it must pass through optimum zone 42, and it provides a copious quantity of nuclei to optimum zone 42 and also to the zones immediately before and after optimum zone 42 to insure that whiskers form and grow with no necessity of having accurate controls.

We are told that cylinder 13 is hotter at the top than at the bottom but not how hot. No temperatures at all are disclosed. We are told that a temperature gradient exists in 13 but not what it is, that "ingredients" A, B, C, and D are mixed in chamber 12 and passed into cylinder 13 but are not told what they are except that one is whisker-producing vapor molecules and another may be "nuclei," comprising particles of barium, calcium, or strontium oxides or carbonates, that free electrons are shot upwardly into cylinder 13 from gun 37 and that all of this makes it unnecessary to exactly control temperature, pressure, and supersaturation because the "vapor itself finds the optimum zone 42" in passing through the cylinder. No pressures or flow rates are mentioned. We are told that an electric discharge point 43 may be placed in wandering zone 42 which "aids in the crystallization of fibers," but not what it discharges or how or in what way it aids crystallization. No example to illustrate the practical operation of the process or the apparatus is given. The strong feeling one gets from reading the entire specification is that either appellant did not have possession of the details of a single operative process or, if he did, he chose not to divulge them. In fact, the deficiencies of the specification are more readily seen by reading it in toto than they are by considering only the specific criticisms the examiner undertook to make.

Basing our decision on the careful consideration of the entire specification and having considered all of appellant's arguments, we are of the opinion that the examiner and the board were fully justified in concluding that the specification leaves too much to conjecture, speculation, and experimentation and is, therefore, insufficient in law to support any of the appealed claims.

■ With respect to the failure to comply with the "best mode" requirement of § 112, put forward by the examiner, the board, and the solicitor, we do not regard the situation here as presenting a "best mode" problem. Failure to set forth *any* mode—which is the situation here—is equivalent to non-enablement. The "best mode" provision is directed to a different type of situation. See In re Gay, 309 F.2d 769, 772, 50 CCPA 725, 731 (1962), where we discussed the first paragraph of § 112, dividing it into parts [A] and [B] (see note 2, supra), and said:

> The essence of portion [A] is that a specification shall disclose an invention in such a manner as will enable one skilled in the art to make and utilize it. *Separate and distinct* from portion [A] is portion [B], the essence of which requires an inventor to disclose the best mode *contemplated by him,* as of the time he executes the application, of carrying out his invention. Manifestly, the sole purpose of this latter requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived.

> As we view portion [B], we think that an inventor is in compliance therewith if he does not conceal what he feels is a preferred embodiment of his invention. The question of whether an inventor has or has not disclosed what he feels is his best mode is, however, a question separate and distinct from the question of the *sufficiency*

of his disclosure to satisfy the requirements of portion [A] of section 112, supra.

The decision of the board is affirmed.

Affirmed.

MILLER, Judge (concurring).

Although I generally agree with the reasoning of the majority and concur in the result reached, I believe the majority's broadly-stated rule regarding sufficiency of the disclosure should be clarified, particularly with respect to its citation of the *Argoudelis* and *Hawkins* cases.

The *Argoudelis* application involved a microorganism starting material which was unknown to the art, but the court found that any person skilled in the art with access to the pending application under Rule 14 and 35 U.S.C. § 122 could obtain the microorganism from a federal government depository and practice the invention from the written disclosure as originally filed; also, that when the patent issued the microorganism would be available to the general public from the depository. The court held that the requirements of section 112 were met, namely: the requirement that the invention be capable of reduction to practice, because, as of the filing date, appellants "had solved all technological problems involved in producing the invention" and the disclosure was sufficient to permit a thorough examination by the Patent Office; and the requirement of complete public disclosure so that those skilled in the art could practice the invention— this in view of the court's ruling that it was not necessary to have public access to the cultures prior to issuance of the patent.

The *Hawkins* application, which disclosed how to make the invention, involved cross-references to preexisting British applications, which disclosed utility (how to use) for the invention. These, being secret, likewise were unknown to the art. During prosecution, the actual textual material from the British application was substituted by amendment for the cross-references. It was accompanied by an affidavit in accordance with MPEP § 608.01(p). The board affirmed the examiner's rejection under section 112 on the basis of no disclosure of utility (how to use) and also under section 132 for the introduction of "new matter." This court reversed, holding that the amendment did not constitute "new matter" because the material contained therein had been identified and specifically referred to in the application as filed. It determined that the reduction to practice requirement of section 112 was satisfied since, *at the time the application was filed,* the specification disclosed how to make the invention, and methods of use were disclosed in the cross-referenced, preexisting British applications. To use the court's words: " . . . no technological problems, the resolution of which would require more than ordinary skill and reasonable time, remain in order to obtain an operative, useful embodiment." Finally, it determined that, with the amendatory material "now fully a part of the specification," the public disclosure requirement of section 112 would be met by the specification as of the issue date.

Accordingly, it can be seen that the phrase "sufficiency of the disclosure" incorporates two separate requirements of section 112: the reduction to practice requirement, which must be satisfied as of the filing date of the application; and the public disclosure requirement (so that those skilled in the art can practice the invention), which need not be satisfied prior to issue date, as this court made clear in *Argoudelis* and *Hawkins.* Insofar as the majority's broad rule relates to the first requirement, those cases are in full support; however, if related to the second requirement, there would be conflict. The second requirement is not involved in the case at bar, so it would be erroneous to conclude that the *Argoudelis* and *Hawkins* rule with respect to the second requirement has now been overruled. However, I believe this clarification of the majority's opinion is needed.