**Gilbert P. HYATT, Appellant,**

v.

**Gary W. BOONE, Cross–Appellant.**

**Nos. 96–1514, 96–1515.**

United States Court of Appeals, Federal Circuit.

June 17, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Aug. 26, 1998.

John M. DiMatteo, Patterson, Belknap, Webb & Tyler LLP, of New York City, argued for appellant. With him on brief was Gregory L. Roth, Law Offices of Gregory L. Roth, of La Palma, California.

Louis Touton, Jones, Day, Reavis & Pogue, of Los Angeles, California, argued for cross–appellant. Of counsel on brief was Jay M. Cantor, Spencer, Frank & Schneider, of Washington, DC.

Before NEWMAN, MICHEL, and PLAGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The parties to Patent Interference No. 102,598 are Gilbert P. Hyatt, inventor of United States Patent No. 4,942,516 entitled

"Single Chip Integrated Circuit Computer Architecture" (the '516 patent), and Gary W. Boone, inventor of patent application Serial No. 07/473,541 entitled "Variable Function Programmed Systems" (the '541 application). Mr. Hyatt appeals the decision of the Board of Patent Appeals and Interferences, entering judgment against him and cancelling the relevant claims of his '516 patent. Mr. Boone cross-appeals the Board's entry of judgment against him. We affirm the Board's decision,[1] with modification of the judgment to declare Boone the prevailing party in the interference.

## DISCUSSION

Determination of priority of invention invokes a complex body of procedural and substantive law, applied in the first instance in administrative proceedings in accordance with 35 U.S.C. § 135(a) ("The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability.") The interference proceeding implements the principle of United States law that the right to a patent derives from priority of invention, not priority of patent application filing.

▓▓▓ The general rule is that the first person to conceive the invention is the first inventor, *see* Irving Kayton, *The United States Patent as a Legal Instrument, in 1 Patent Practice* 2–1, 2–39 (Irving Kayton and Karyl S. Kayton eds., 4th ed. 1989) ("The earliest possible date of invention, therefore, is the date of conception."), provided that when the first to conceive the invention is the last to reduce it to practice, the person who was first to conceive must have exercised reasonable diligence to his own actual or constructive reduction to practice, "from a time prior to conception by the other." 35 U.S.C. § 102(g). *See* Charles L. Gholz, *Interference Practice, in 6 Patent Practice, supra,* 24–1, 24–6(c); *Paulik v. Rizkalla,* 760 F.2d 1270, 1272, 226 USPQ 224, 225 (Fed.Cir. 1985) (in banc). Thus, during an interference proceeding evidence may be presented of conception, reduction to practice, and diligence, as appropriate to the positions of the

parties, *see id.; see generally* Gholz, *supra,* at 24–1, or a party may rely on the patent document to establish the facts of priority of invention. *See* Gholz, *supra,* at 24–45.

The contested invention is a computer formed on a single integrated circuit chip, having specified circuits and functions. The sole count of the interference is:

A computer on a chip comprising:

an integrated circuit chip having a computer implemented thereon;

an integrated circuit main memory storing computer instructions, wherein said integrated circuit main memory is included on said integrated circuit chip;

an integrated circuit operand memory storing operands, wherein said integrated circuit operand memory is included on said integrated circuit chip; and

an integrated circuit processing circuit processing the operands stored by said integrated circuit operand memory in response to the instructions stored in said integrated circuit main memory, wherein said processing circuit is included on said integrated circuit chip.

The interference contest was initiated by Boone after Hyatt's '516 patent issued. Boone followed the procedure of copying certain of Hyatt's patent claims into his pending application and asking the patent examiner to "declare" the interference. 37 C.F.R. § 1.607 (1990). The examiner so acted. *See* 37 C.F.R. § 1.611 (1990).

Both parties claimed the benefit of earlier-filed patent applications, relying on the earlier applications for constructive reduction to practice of the subject matter of the count. *See* 37 C.F.R § 1.626 (1990). Conception is not at issue in this appeal, and neither party presented evidence of actual reduction to practice. At the Motions stage from which the Board's decision evolved, the only issue was each party's entitlement to certain asserted dates of constructive reduction to practice.

Boone was granted an effective filing date, through a chain of nine prior applications, of

---

1. *Hyatt v. Boone,* Patent Interference No. 102,-598 (Bd. Pat.App. & Inter. Sept. 19, 1995) (Decision after Final Hearing); *Hyatt v. Boone,* Patent Interference No. 102,598 (Bd. Pat.App. & Inter. May 10, 1996) (Decision on Reconsideration).

an application filed on July 19, 1971. Hyatt was granted an effective filing date, through a chain of four prior applications, of an application filed on December 14, 1977. The Board denied Hyatt the benefit of the filing date of his December 28, 1970 application No. 05/101,881 (the '881 application) as to the subject matter of the count. Hyatt disputes the denial of the '881 application filing date, and also challenges the date awarded to Boone.

## I

### HYATT'S '881 APPLICATION

 The filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application. *Yasuko Kawai v. Metlesics,* 480 F.2d 880, 885, 178 USPQ 158, 162 (CCPA 1973) ("[T]he act of filing the United States application has the legal effect of being, constructively at least, a simultaneous conception and reduction to practice of the invention."); *see Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1376, 231 USPQ 81, 87 (Fed.Cir.1986) ("constructive reduction to practice occurs when a patent application on the claimed invention is filed"); *In re Glass,* 492 F.2d 1228, 1232, 181 USPQ 31, 34 (CCPA 1974). There is no need for proof or corroboration of the subject matter that is included in the application unless a date earlier than the filing date is sought to be established. *Yasuko Kawai,* 480 F.2d at 886, 178 USPQ at 163 ("the written specification in the application is the evidence proving the invention of that which is reduced to practice"). Thus the inventor need not provide evidence of either conception or actual reduction to practice when relying on the content of the patent application.

 However, the patent application must comply with the legal requirements for support of the interference count. When a party to an interference seeks the benefit of an earlier-filed United States patent application, the earlier application must meet the requirements of 35 U.S.C. § 120 [2] and 35 U.S.C. § 112 ¶ 1 [3] for the subject matter of the count. The earlier application must contain a written description of the subject matter of the interference count, and must meet the enablement requirement. *Fiers v. Revel,* 984 F.2d 1164, 1170, 25 USPQ2d 1601, 1606 (Fed.Cir.1993) (section 112 paragraph 1 must be met by the earlier application). The Board found that Hyatt's '881 application did not provide the requisite written description; the Board did not decide the question of enablement.

### A

 We review the Board's findings on the standard of clear error, for compliance with the written description requirement is a question of fact. *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563, 19 USPQ2d 1111, 1116 (Fed.Cir.1991). Hyatt relies as written description on the text of claim 40 as that claim was originally filed in the '881 application, viewed with the entire specification.

 The claims as filed are part of the specification, and may provide or contribute to compliance with § 112. *See Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 938, 15 USPQ2d 1321, 1326 (Fed.Cir. 1990) (the original claims are part of the patent specification); *In re Benno,* 768 F.2d 1340, 1346, 226 USPQ 683, 686–87 (Fed.Cir. 1985); *In re Frey,* 35 C.C.P.A. 970, 166 F.2d 572, 575, 77 USPQ 116, 119 (CCPA 1948). Hyatt's original claim 40 is for a data processing system implemented on a single integrated circuit chip, as follows:

> 40. An electronic data processing system including read only memory means, alterable memory means and program means, said system being implemented on a single integrated circuit chip.

---

2. **35 U.S.C. § 120. Benefit of earlier filing date in the United States.**

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States ... shall have the same effect, as to such invention, as though filed on the date of the prior application. ...

3. **35 U.S.C. § 112 ¶ 1.**

[The application must contain] a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same. ...

There is no other mention in the '881 specification of a single integrated circuit chip, although other electronic data systems are extensively described.

Hyatt's position is that the text of claim 40 describes the subject matter of the interference count, in that the "read only memory means" of claim 40 is the same as the "integrated circuit main memory storing computer instructions" of the count, the "alterable memory means" of claim 40 is the same as the "integrated circuit operand memory storing operands" of the count, and the "program means" of claim 40 is the same as the "integrated circuit processing circuit" of the count. Hyatt states that the '881 specification contains detailed descriptions of various computer circuits, which supplement the text of claim 40 in that the specification describes a computer made up of numerous integrated circuits mounted on multiple printed circuit boards and comprising a "physically distributed, operatively dispersed system."

The Board held that the written description must be sufficient, when the entire specification is considered, that the "necessary and only reasonable construction" that would be given it by a person skilled in the art is one that clearly supports each positive limitation in the count. The Board found that the term "program means" in claim 40 is used to describe only computer instructions or as a modifier of "program control means," and does not describe or require the interpretation that the program processes the operands stored by the alterable memory in accordance with instructions stored in the read only memory, as is required by the count. The Board also found that the "read only memory means" of claim 40 need not be a main memory storing computer instructions, and that the "alterable memory means" of claim 40 need not be an operand memory storing operands. Thus the Board found that original claim 40 could be read as describing subject matter other than that of the count, and thus did not establish that Hyatt was in possession of the invention of the count. The Board found that the parts of the written description that are lacking from claim 40 are not provided elsewhere in the '881 specification, whose systems and circuitry neither describe nor suggest a computer on a single chip. The Board concluded

that "[w]hile two memories and a computer program may generally constitute a data processing system of some sort, they do not describe the invention set forth by the count."

Rejecting Hyatt's argument, supported by testimony of witnesses, that the absent description would have been apparent to persons of skill in this field, the Board stated that "if 'program means' can be a circuit (processor) that responds to a program as indicated by [Hyatt's] witnesses, it is at least as likely that it can be a memory that merely stores a program without processing operands." The Board held that witnesses can not "establish facts which the disclosure itself should provide," citing *In re Smyth*, 38 C.C.P.A. 1130, 189 F.2d 982, 990, 90 USPQ 106, 112 (CCPA 1951). Hyatt challenges these findings and conclusions, as well as the Board's legal standard for determining compliance with the written description requirement.

**B**

For an earlier-filed application to serve as constructive reduction to practice of the subject matter of an interference count, the applicant must describe the subject matter of the count in terms that establish that he was in possession of the later-claimed invention, including all of the elements and limitations presented in the count, at the time of the earlier filing. Although Hyatt is correct that known details need not be included in a patent specification, *see In re Eltgroth*, 57 C.C.P.A. 833, 419 F.2d 918, 921, 164 USPQ 221, 223 (CCPA 1970) ("This court has often observed that minutiae of descriptions or procedures perfectly obvious to one of ordinary skill in the art yet unfamiliar to laymen need not be set forth."), when an explicit limitation in an interference count is not present in the written description whose benefit is sought it must be shown that a person of ordinary skill would have understood, at the time the patent application was filed, that the description requires that limitation. As discussed in *Martin v. Mayer*, 823 F.2d 500, 505, 3 USPQ2d 1333, 1337 (Fed.Cir.1987), "It is 'not a question of whether one skilled in the art *might* be able

to construct the patentee's device from the teachings of the disclosure.... Rather, it is a question whether the application necessarily discloses that particular device.' " (quoting *Jepson v. Coleman,* 50 C.C.P.A. 1051, 314 F.2d 533, 536, 136 USPQ 647, 649–50 (CCPA 1963)). *See Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1571–72, 41 USPQ2d 1961, 1966 (Fed.Cir.1997). It is insufficient as written description, for purposes of establishing priority of invention, to provide a specification that does not unambiguously describe all limitations of the count. *See, e.g., Wagoner v. Barger,* 463 F.2d 1377, 1380, 175 USPQ 85, 86–87 (CCPA 1972); *Dyer v. Field,* 55 C.C.P.A. 771, 386 F.2d 466, 156 USPQ 85 (CCPA 1967); *Bocciarelli v. Huffman,* 43 C.C.P.A. 873, 232 F.2d 647, 109 USPQ 385 (CCPA 1956).

■ Hyatt and Boone presented conflicting views of the knowledge of a person of ordinary skill in the field of the invention at the time the '881 patent application was filed, and disputed whether such a person would have understood the text of Hyatt's original claim 40 as describing all of the limitations of the count. Hyatt's witnesses testified that a person of skill in this field would have known that the program means processes the operands in accordance with the read-only memory instructions, and would have readily understood that the program means, read only memory means, and alterable memory means cooperate in the way stated in the count. The Board criticized this testimony on the ground that although Hyatt's witnesses stated that it was well known that a data processing system must include a processing circuit of some sort, they did not address "whether a data processing system must necessarily include the specific processing circuit required by the count." We have not been shown clear error in the Board's findings as to the content of the written description, and the conclusion that the missing subject matter was not known details, but significant claim limitations; the missing subject matter was not shown to be part of the prior art that would be understood as part of the description of the subject matter of the count.

■ Hyatt states that even if the Board's findings are not clearly erroneous as to the content of the written description, the Board applied an incorrect legal standard in requiring that the specification "necessarily" describe the entire subject matter of the count. Hyatt states that a separate body of precedent, typified by *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 19 USPQ2d 1111 (Fed.Cir. 1991), states a different and better standard. In *Vas–Cath* the court stated that the applicant must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *Id.* at 1563–64, 935 F.2d 1555, 19 USPQ2d at 1117. Other cases have used the same words in assessing the adequacy of the written description. *See, e.g., Fujikawa v. Wattanasin,* 93 F.3d 1559, 1570, 39 USPQ2d 1895, 1904 (Fed.Cir.1996) ("the disclosure need only reasonably convey to persons skilled in the art that the inventor had possession of the subject matter in question"); *Fiers v. Revel,* 984 F.2d at 1170, 25 USPQ2d at 1606 (same); *In re Kaslow,* 707 F.2d 1366, 1375, 217 USPQ 1089, 1096 (Fed. Cir.1983) (same). Hyatt states that he readily met this requirement, in that original claim 40 of his '881 application reasonably conveyed to persons of skill in this field that he possessed the invention of the count.

■ Hyatt argues that "reasonably conveys to the artisan" is a less rigorous and more reasonable measure of the written description requirement than the "necessary and only reasonable construction" standard that the Board applied. Precedent has used both phrases, as well as others. *See, e.g., In re Wertheim,* 646 F.2d 527, 538–39, 209 USPQ 554, 565 (CCPA 1981) (the disclosure relied on must "constitute[ ] a full, clear, concise and exact description ... of the invention claimed"). We do not view these various expressions as setting divergent standards for compliance with § 112. In all cases, the purpose of the description requirement is "to ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him." *In re Edwards,* 568 F.2d 1349, 1351–52, 196 USPQ 465, 467 (CCPA 1978). Thus, the written description must include all of the limitations of the interference count, or the applicant must show that any absent text is necessarily comprehended in the description provided and

would have been so understood at the time the patent application was filed.

The Board did not clearly err in finding that Hyatt did not establish in the '881 application's written description that he possessed the entire subject matter of the count. This finding comports with the criterion not only of whether the description conveyed to the artisan the specific subject matter of the count, but also of whether the applicant established that this was the necessary construction of that description. The written description must include the limitations of the count with sufficient clarity and specificity that "persons of ordinary skill in the art will recognize from the disclosure that appellants invented processes including those limitations," *In re Wertheim*, 541 F.2d 257, 262, 191 USPQ 90, 96 (CCPA 1976). The denial to Hyatt of benefit of the '881 application date as constructive reduction to practice of the interference count is affirmed.

II

BOONE'S '565 APPLICATION

■ Hyatt objected to the action of the administrative patent judge in according Boone the benefit of the July 19, 1971 filing date of application Serial No. 163,565 (the '565 application), the first of ten applications culminating in the '541 application in interference. Hyatt's objection is that at least two of these ten applications are invalid continuation applications, thus breaking the chain of priority. Hyatt states that Boone's second and eighth applications, both of which were filed under the "streamlined" procedures of 37 C.F.R. § 1.60 (Rule 60) with photocopies of the prior specification and oath, contained amended claims and thus could not have been filed under Rule 60, but required a new oath. Boone concedes the facts of these filings, but argues that these are not flaws, or not flaws fatal to his entitlement to trace priority through the chain.

■ Rule 60, at the time of Boone's first challenged continuation application in 1973, was as follows:

37 C.F.R. § 1.60 [1973]. A continuation or divisional application ... which discloses and claims only subject matter disclosed in a prior application may be filed as a separate application before the patenting or abandonment of or termination of proceedings on the prior application. If the application papers comprise a copy of the prior application as filed, signing and execution by the applicant may be omitted.... Only amendments reducing the number of claims or adding a reference to the prior application (§ 1.78(a)) will be entered before calculating the filing fee and granting of the filing date.

By 1987, when Boone's eighth continuation was filed, Rule 60 had been elaborated as follows:

37 C.F.R. § 1.60(b) [1987]. An applicant may omit signing of the oath or declaration in a continuation or divisional application if ... (2) applicant files a true copy of the prior complete application as filed including the specification (including claims), drawings, oath or declaration showing the signature or an indication it was signed, and any amendments referred to in the oath or declaration filed to complete the prior application.... Only amendments reducing the number of claims or adding a reference to the prior application (§ 1.78(a)) will be entered before calculating the filing fee and granting of the filing date.

From the text of these provisions, it is not clear whether any technical violation of Rule 60 actually occurred with the presentation of amended claims. The administrative patent judge found none. No objection to compliance with Rule 60 was raised by the PTO at the time these applications were filed and prosecuted. The issue here raised is not one of substantive continuity of disclosure, but solely of whether a photocopy of the prior oath, instead of a new oath, was acceptable for filing, when it was in fact accepted for filing. Any technical deficiency in meeting the formal requirements of Rule 60 must be viewed in light of the agency's acceptance of the applications as in compliance with the Rule. Regularity of routine administrative procedures is presumed, and departure therefrom, should such have occurred, is not grounds of collateral attack. Courts should not readily intervene in the day-to-day operations of an administrative agency, especially when the agency practice is in straightfor-

ward implementation of the statute. *Cf. Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) ("[T]his Court has for more than four decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments."); *Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 333–34, 96 S.Ct. 579, 46 L.Ed.2d 533 (1976) (" 'The Court, it is true, has power 'to affirm, modify, or set aside' the order of the Commission 'in whole or in part.' ... But that authority is not power to exercise an essentially administrative function.' ") (quoting *Federal Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 21, 73 S.Ct. 85, 97 L.Ed. 15 (1952)). We also take note, as held in *Weil v. Fritz*, 572 F.2d 856, 863, 196 USPQ 600, 606 (CCPA 1978), that the "applicant's oath is not a requirement of § 112, first paragraph, but of 35 U.S.C. § 115; therefore, the sufficiency of [the prior] oath is not material under § 120."

We discern no reversible error in the grant to Boone of the benefit of his chain of filings.

## III

### BOONE'S CROSS–APPEAL

The Board declined to enter judgment in favor of Boone, and entered judgment against Boone based on his request that his application be converted into a Statutory Invention Registration (SIR). Boone appeals the Board's refusal to rule on the patentability of his claims, which had been rejected on the ground of double patenting, and states that the Board erred in its refusal to enter judgment that the issue of priority was decided in his favor.

At the hearing before the Board Boone renewed his request that the '541 application be converted into a Statutory Invention Registration in accordance with 35 U.S.C. § 157. The SIR permits an inventor to forego the grant of a patent while preserving the opportunity to contest priority through interference proceedings. The statute provides:

**35 U.S.C. § 157. Statutory invention registration**

(a) Notwithstanding any other provision of this title, the Commissioner is authorized to publish a statutory invention registration containing the specification and drawings of a regularly filed application for a patent without examination if the applicant—

(1) meets the requirements of section 112 of this title;

(2) has complied with the requirements for printing, as set forth in regulations of the Commissioner;

(3) waives the right to receive a patent on the invention within such period as may be prescribed by the Commissioner; and

(4) pays application, publication, and other processing fees established by the Commissioner.

\* \* \* \* \* \*

(c) A statutory invention registration published pursuant to this section shall have all of the attributes specified for patents in this title except those specified in section 183 and sections 271 through 289 of this title. A statutory invention registration shall not have any of the attributes specified for patents in any other provision of law other than this title.... The invention with respect to which a statutory invention certificate is published is not a patented invention for purposes of section 292 of this title. ·

The inventor of the SIR has "the same rights that a patent provides to prevent others from patenting the invention." *Section–by–Section Analysis: Patent Law Amendments of 1984*, 130 Cong. Rec. H10525 (Oct. 1, 1984), *reprinted in* 1984 U.S.C.C.A.N. 5827, 5828. The inventor preserves the ability to protect the right to practice his own prior invention as against any later inventor, while foregoing the right to exclude others even if he is the prior inventor. Thus the SIR affords an inventor the possibility of securing the defensive aspects of a patent by obtaining the right to contest priority, while agreeing to publish the technology, thereby benefitting the public. *Id.*

Boone moved for permission to convert his '541 application to a SIR, after Boone had initiated this interference with

Hyatt and Boone's '541 application was rejected, on Hyatt's motion, on the ground of double patenting. Boone argues that the conversion of the '541 application to the SIR removed the only obstacle to patentability raised by the double patenting rejection, *i.e.* that of extension of effective patent life, because the SIR—since it is not an enforceable patent—would not effectively extend the patentee's right to exclude. Boone argues that he is entitled to a decision as to patentability although he will not obtain a patent.

The Board did not err in declining to rule on this issue in view of Boone's requested conversion to a SIR. Although Boone states that he is free to withdraw the SIR application at any time until the PTO has given notice of the intent to publish it, the intervening event of the interference proceeding has eliminated this option. Although administrative flexibility to accommodate changed circumstances or interests is a benefit of agency practice, there is rarely room for a complete change in position after the contrary position had achieved its purpose in a contested situation. We draw analogy to the rules of integrity in judicial proceedings. *See, e.g., Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."); *cf. U.S. Philips Corp. v. Sears, Roebuck & Co.,* 55 F.3d 592, 596–97, 34 USPQ2d 1699, 1702–03 (Fed.Cir.1995) (equity holds a party to a position on which it prevailed).

The Board has instructed that Boone's application be examined for the purpose of publication as a SIR. Indeed, Boone has repeated on this appeal that he has no objection to this procedure. In view of Boone's action in requesting conversion to a SIR and the ensuing proceedings, the Board did not err in holding that Boone is not entitled to a patent on the '541 application. However, the patent interference statute requires the Board to determine which party has prevailed on the issue of priority. 35 U.S.C. § 135(a) ("The Board of Patent Appeals and Interferences shall determine questions of priority ....").

Priority issues that have been fully developed and presented for decision should be decided. *See Guinn v. Kopf,* 96 F.3d 1419, 1422, 40 USPQ2d 1157, 1159 (Fed. Cir.1996). Indeed, the Board did decide priority, for the Board held that Hyatt was not entitled to the benefit of his '881 application date, and confirmed that Boone was entitled to his '565 application date. The Board's reason for refusing to recognize Boone's status as prior inventor was that Boone "was not entitled to a patent by express waiver of that right," citing 35 U.S.C. § 157(a)(3). However, the SIR waiver does not affect the adjudication of priority in resolution of the interference proceeding. The Board's statement, in its reconsideration decision, that it could not adjudge Boone to be prior inventor without also holding that Boone was entitled to a patent, citing 37 C.F.R. § 1.658(a), is an unwarranted reading of the regulation and is unsupported by the statute. Although the Board correctly ruled that Boone was not entitled to a patent, that ruling is not inconsistent with an adjudication of priority. Thus the judgment is modified to state that priority as to the count is awarded to Boone.

## SUMMARY

The Board's decision that Hyatt is not entitled to the priority date of the '881 application as to the subject matter of the count is affirmed, as is the Board's decision that Boone is not entitled to a patent on this subject matter. However, judgment of priority in the interference contest shall be entered in favor of Boone.

No costs.

*AFFIRMED, MODIFIED IN PART.*