**Martin Gardner REIFFIN,
Plaintiff–Appellant,**

v.

**MICROSOFT CORPORATION,
Defendant–Appellee.**

No. 98–1502.

United States Court of Appeals,
Federal Circuit.

June 5, 2000.

Rehearing Denied June 30, 2000.*

---

* Circuit Judge Newman would rehear the appeal.

Martin G. Reiffin, of Danville, California, argued pro se. On the brief were Edward F. O'Connor, Stradling Yocca Carlson & Rauth, of Newport Beach, California. Of Counsel on the brief were Thomas A. Fairhall, Christopher M. Cavan, and James C. Gumina, McDonnell Boehnen Hulbert & Berghoff, of Chicago, Illinois.

John D. Vandenberg, Klarquist Sparkman Campbell Leigh & Whinston, LLP, of Portland, Oregon, argued for defendant-appellee. With him on the brief were James E. Geringer and Joseph T. Jakubek. Of counsel on the brief were Terrence P. McMahon, William L. Anthony, Jr., Eric L. Wesenberg, and Heidi Keefe, Orrick Herrington & Sutcliffe, LLP, of Menlo Park, California.

Steven M. Anzalone, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, for amici curiae Garmin International, Inc., and National Association of Manufacturers. With him on the brief were Don O. Burley and Robert L. Burns.

Before NEWMAN, MICHEL, and SCHALL, Circuit Judges.

OPINION PER CURIAM, JUDGE PAULINE NEWMAN CONCURS IN THE JUDGMENT WITH OPINION.

PER CURIAM.

Martin Gardner Reiffin appeals the decision of the United States District Court for the Northern District of California,[1] granting summary judgment that United States Patents Nos. 5,694,603 and 5,694,604 are

---

1. *Reiffin v. Microsoft Corp.,* 48 USPQ2d 1274 (N.D.Cal.1998).

invalid for failure to meet the "written description" requirement of 35 U.S.C. § 112, first paragraph. We conclude that the district court erred in application of the statute. The summary judgment is reversed, and the case is remanded for further proceedings.

## DISCUSSION

In 1982 Mr. Reiffin filed a patent application entitled "Computer System with Real–Time Compilation." The application discloses a system in which a combination of software and hardware compiles a computer program concurrently with the program's entry into an editor, achieving what is described as "contemporaneous real-time entry and compilation of a source program." A source program is a computer program written in a high level human readable language which the application refers to as source code; the end product of the compilation of the source program is a binary machine language composition which the application refers to as object code, and which is required for the program's execution by a computer. We also take notice of the following dictionary definitions:

> COMPILE B to generate a program written in machine language (or sometimes in symbolic language) from a program written in a high level language such as BASIC or FORTRAN V.
> EDITOR B a software or firmware tool, a program or part of a program ... [which] aids in modifying, editing, rewriting, changing, or debugging a program being developed.

Philip E. Burton, *A Dictionary of Microcomputing* 31, 51 (1976).

The system as described in the specification utilizes an "interrupt mode of operation" to allow the computer's Central Processing Unit ("CPU") to execute a compiler and an editor seamlessly as viewed by the computer user. In normal operation the compiler is continuously exe-

cuted by the CPU; as the compiler is executed it performs lexical, syntactic, and semantic analyses of program source code stored in a source buffer in the computer's memory, outputting compiled object code into an object buffer. Whenever the computer user strikes a key on the keyboard, a so-called "interrupt sequence" causes the compiler's execution to pause and directs the CPU to execute the editor. After the editor performs whatever operation is required by the keystroke (for example, entering an alphanumeric character into the source buffer), a "return" instruction is executed by the CPU. This return instruction ends the interrupt sequence and causes the CPU to resume its normal state in which the compiler is continuously executed. The specification also describes an alternative embodiment in which the interrupt sequence is activated by a timer or clock instead of by the keyboard.

Mr. Reiffin filed a continuation of the 1982 application in 1985. He filed another continuing application with additional text and modified claims in 1990, describing the system as a "multithreaded computer application." [2] The 1990 application issued as the '603 patent on December 2, 1997. The '604 patent, filed in 1994 as a continuation of the 1990 application, also issued on December 2, 1997. The claims of the '603 and '604 patents were amended several times during the lengthy prosecution, which included appeals to the Board of Patent Appeals and Interferences.

The two patents in suit have the same specification, and differ as to their claims; the '603 patent claims a memory product storing multithreaded software, and the '604 patent claims a method of multithreaded operation and a multithreaded system. Claim 12 of the '603 patent is representative:

> 12. A computer-readable disk means encoded with a plurality of concurrently executable threads of instructions consti-

---

**2.** Multithreading is defined in the '603 and '604 patents as "the concurrent time-sliced preemptive execution of a plurality of

threads of instructions located within the same ... application program." '603 patent, col. 1:25–38.

tuting a multithreaded computer application program to control the execution of a desktop microcomputer having an interrupt operation, a clock timer for periodically activating said interrupt operation, and memory means for storing a body of data, said encoded executable instructions comprising

a first thread of instructions executable by the microcomputer and including means to process said stored body of data,

at least a second thread of instructions for preemptively taking control of the microcomputer in response to said periodic activations of said interrupt operation by said clock timer and including means to process said stored body of data for a brief time interval after each said preemption,

and said first thread of instructions repeatedly regaining control of the computer after each said time interval so that said first thread of instructions resumes processing said body of data at the point where it had been previously preempted,

whereby said threads of instructions execute concurrently in a multithreaded mode of operation.

Mr. Reiffin charged that several of Microsoft's software applications infringe the '603 and '604 patents, including word processing programs that check spelling and grammar as text is entered, and operating systems such as Windows 98 which control switching of the program threads that are active during normal operation of a personal computer.

On cross-motions for summary judgment on the issue of patent validity, the district court granted Microsoft's motion and held all of the claims invalid for failure to comply with the written description requirement of 35 U.S.C. § 112 ¶ 1. The district court determined that, as a matter of law, the written description requirement encompasses an "omitted element test" which "prevents a patent owner from asserting claims that omit elements that were essential to the invention as original-

ly disclosed." *Reiffin*, 48 USPQ2d at 1278. Examining the contents of the original 1982 application, the district court found that the specification described four elements as essential to the invention C a compiler, an editor, an interrupt, and a return. Reviewing the seventy-seven claims of the issued '603 and '604 patents, the court concluded that none of the claims includes all four elements, and held all of the claims invalid for failure to comply with the written description requirement.

We conclude that the district court erred in looking to the text of the original 1982 application to determine whether the '603 and '604 patents, filed in 1990 and 1994, comply with the written description requirement. For purposes of § 112 ¶ 1, the relevant specifications are those of the '603 and '604 patents; earlier specifications are relevant only when the benefit of an earlier filing date is sought under 35 U.S.C. § 120.

### A

■■■ The district court did not decide whether the claims of the '603 and '604 patents are adequately supported by the written descriptions of the inventions set forth in the specifications of those patents. However, that is all that is required for compliance with the written description requirement of § 112 ¶ 1, which states the basic requirements for the content of the specification:

> 35 U.S.C. § 112 ¶ 1. The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same....

The purpose of this provision is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification. *See In re Gosteli*, 872 F.2d 1008, 1012, 10 USPQ2d 1614, 1618 (Fed.

Cir.1989) ("[T]he description must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."); *see also Vas–Cath, Inc. v. Mahurkar,* 935 F.2d 1555, 1561, 19 USPQ2d 1111, 1115 (Fed.Cir.1991) ("Adequate description of the invention guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." (quoting *Rengo Co. v. Molins Mach. Co.,* 657 F.2d 535, 551, 211 USPQ 303, 321 (3d. Cir.1981))).

■ Compliance of the '603 and '604 patents with the written description requirement requires that the specifications of these patents describe the inventions claimed in these patents. Thus, for example, the 1990 application considered as a whole must convey to one of ordinary skill in the art, either explicitly or inherently, that Mr. Reiffin invented the subject matter claimed in the '603 patent. *See Vas–Cath,* 935 F.2d at 1563, 19 USPQ2d at 1116; *Continental Can Co. USA v. Monsanto Co.,* 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed.Cir.1991) (descriptive matter may be inherently present in a specification if one skilled in the art would necessarily recognize such a disclosure).

Microsoft did not dispute, in its motion for summary judgment or on this appeal, that the descriptive texts of the issued '603 and '604 patents meet the written description requirement as to the claims of those patents, and the district court did not discuss this issue. Instead, the district court looked to the specification of Reiffin's 1982 grandparent application for the written description relevant to the claims of the '603 and '604 patents, apparently relying on the statement in *Gentry Gallery, Inc. v. Berkline Corp.* that "[the inventor's] original disclosure serves to limit the permissible breadth of his later-drafted claims." 134 F.3d 1473, 1479, 45 USPQ2d 1498, 1503 (Fed.Cir.1998). This reliance was misplaced, however, for in *Gentry Gallery* there were no prior applications and the "original disclosure" was that of the issued patent. The "original disclosure" refer-

ence simply recognized that "the sufficiency [of a disclosure] under § 112, first paragraph must be judged as of its filing date." *Application of Glass,* 492 F.2d 1228, 1232, 181 USPQ 31, 34 (CCPA 1974).

## B

■ Analysis of the disclosure in ancestor applications is appropriate when benefit of an earlier filing is sought under 35 U.S.C. § 120:

> 35 U.S.C. § 120. An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States ... shall have the same effect, as to such invention, as though filed on the date of the prior application....

Although § 120 incorporates the requirements of § 112 ¶ 1, these requirements and the statutory mechanism allowing the benefit of an earlier filing date are separate provisions with distinct consequences. In accordance with § 120, claims to subject matter in a later-filed application not supported by an ancestor application in terms of § 112 ¶ 1 are not invalidated; they simply do not receive the benefit of the earlier application's filing date. *See, e.g., Hyatt v. Boone,* 146 F.3d 1348, 1352, 47 USPQ2d 1128, 1130 (Fed.Cir.1998). Thus the district court erred in holding the '603 and '604 claims invalid for failure to comply with the written description requirement.

Mr. Reiffin states that he does not need the benefit of the 1982 application's filing date. Microsoft disagrees. We do not undertake this determination on the undeveloped record before us. Since the district court erred in looking to the 1982 specification for support under § 112 of the claims granted on the 1990 and 1994 specifications, we do not reach Mr. Reiffin's challenge to the "omitted element test."

## CONCLUSION

The summary judgment is reversed. We remand for further proceedings.

Costs to Mr. Reiffin, Fed. R.App. P. 39(a).

*REVERSED AND REMANDED*

PAULINE NEWMAN, Circuit Judge, concurring in the judgment.

The ground on which the district court based its ruling is not treated in this court's *per curiam* opinion, leaving the remand in procedural and substantive limbo. The sole basis of the district court's summary judgment was its adoption of the "omitted element test," which was in turn derived from Microsoft's incorrect statement of the law of written description.[3] The issues concerning the "omitted element test" were fully presented on appeal, and our reversal of the summary judgment on a different ground does not answer the question that is central to this case. Our silence on whether this is a correct rule of law will be singularly mischievous, for it relates to Mr. Reiffin's entitlement to his earlier filing date under 35 U.S.C. § 120, an issue that the parties expect to be raised on the case's return to the district court.

The district court accepted Microsoft's proposition that the patentee must include in every claim "each and every element" that was described as "part of his invention," whether or not the element is necessary for patentability of the claim. Failure to do so, the district court held, invalidates the claims for noncompliance with the written description requirement of § 112 ¶ 1. That is not a correct statement of the law. Section 112 ¶ 2 instructs the applicant to "distinctly claim[ ] the subject matter which the applicant regards as his invention." This does not automatically require inclusion in every claim of every element that is part of the device or its operation.

It is standard for applicants to provide claims that vary in scope and in content, including some elements of a novel device or method, and omitting others. *See* Irving Kayton, 1 *Patent Practice* (6th ed.) 3.1, 3.3 (1995):

> [P]atent practitioners typically draft a series of claims approximating a spectrum of patent protection.... The first way in which a claim may be made narrower is by adding a limitation to it in the form of an additional element.

Claiming an invention in this manner does not raise an issue of compliance with § 112 ¶ 1. Indeed, the "omitted element test" threatens this venerable practice, which is also summarized in Ernest B. Lipscomb, III, 3 *Lipscomb's Walker on Patents* 290–91 (1985):

> [A] claim may cover an invention embracing the entire process, machine, manufacture, or composition of matter which is described in the specification, or it may cover such sub-processes or such sub-combinations of the invention as are new, useful and patentable.

*See, e.g., Special Equipment Co. v. Coe,* 324 U.S. 370, 65 S.Ct. 741, 89 L.Ed. 1006 (1945) (reversing the rejection of a subcombination claim directed to the previously claimed invention less one element). While the specification must of course describe the claimed invention, it is well established that the claims need not include every component that is described in the specification. *See Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 345, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (There is "no legally recognizable or protected 'essential' element ... in a combination patent."). The decision in *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 45 USPQ2d 1498 (Fed.Cir.1998), cited as authority by the district court, does not hold otherwise.

---

**3.** Microsoft stated: "This is a dispositive motion for summary judgment of invalidity based upon the patents' failure to contain a 'written description' of the claimed subject matter as required by 35 U.S.C. § 112 ¶ 1 .... Each

and every element originally described by the inventor as being a part of his invention (sometimes referred to as 'essential elements') must appear in the claims ultimately issued in the patent. *See, e.g., Gentry Gallery.*"

In *Gentry Gallery* the issue was whether the written description, which described a specific location of a control console on a reclining sofa, adequately supported broad claims that were not limited to this location of the console; these broad claims were asserted by the patentee against a reclining sofa having the control console in a different location. This court held that the broad claims were not supported by the written description, and were invalid. As explained in *Johnson Worldwide Assoc. v. Zebco Corp.*, 175 F.3d 985, 993, 50 USPQ2d 1607, 1613 (Fed.Cir.1999), "this court's determination [in *Gentry Gallery* ] that the patent disclosure did not support a broad meaning for the disputed claim terms was premised on clear statements in the written description that described the location of a claim element . . . as 'the only possible location' and that variations were 'outside the stated purpose of the invention.' " The *Gentry Gallery* decision did not create a new requirement of claim content, or change the long-standing law and practice of claim drafting. *Gentry Gallery* is simply one of many decisions holding that, as quoted by the district court, "claims in an application which are broader than the applicant's disclosure are not allowable." *Application of Sus*, 49 C.C.P.A. 1301, 306 F.2d 494, 505, 134 USPQ 301, 310 (CCPA 1962) (citations omitted).

Microsoft also cites *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 47 USPQ2d 1829 (Fed. Cir.1998), as supporting the "omitted element test." In *Tronzo*, a first application was directed specifically and narrowly to a conical-shaped hip prosthesis; a continuation-in-part application then described additional shapes for the prosthesis, and for the first time presented generic claims that covered the additional shapes. This court explained that the generic claims were not entitled to the parent application's filing date under § 120, for the generic claims were not supported by the

written description in the parent application. *See id.* at 1158, 156 F.3d 1154, 47 USPQ2d at 1833 (it is "clear that the [parent specification] discloses only conical shaped cups and nothing broader."). The generic claims were then invalidated, not because of any "omitted element," but because of an intervening publication which rendered them anticipated.

Nor are the other cases on which Microsoft and the district court relied relevant. They concern reissued patents having broadened claims, the courts applying 35 U.S.C. § 251 and predecessor statutes which prohibit broadening reissue claims after two years, whether or not the broader claims are supported in the specification. For example, *U.S. Industrial Chems., Inc. v. Carbide & Carbon Chem. Co.*, 315 U.S. 668, 677–78, 62 S.Ct. 839, 86 L.Ed. 1105 (1942) holds that the omission from the reissue claims of one of the steps or elements prescribed in the original claims, "thus broadening the claims to cover a new and different combination," voids the reissue. Microsoft also relies on the authority of *Olin v. Timken*, 155 U.S. 141, 146–47, 15 S.Ct. 49, 39 L.Ed. 100 (1894), *Huber v. Nelson Mfg. Co.*, 148 U.S. 270, 291–92, 13 S.Ct. 603, 37 L.Ed. 447 (1893), and *Mathews v. Boston Machine Co.*, 105 U.S. 54, 58, 26 L.Ed. 1022 (1881). These reissue rulings have no relevance whatsoever to this case, which does not concern claim broadening by reissue.

When the claim is supported by the patent's disclosure, is adequately distinguished from the prior art, and otherwise meets the statutory requirements of patentability, neither law nor policy requires that the claim contain all the elements described in the specification as part of the new machine or method. The district court's controversial and incorrect decision should be confronted, not ignored.