**Martin Gardner REIFFIN, Plaintiff,**

v.

**MICROSOFT CORPORATION, Defendant.**

**Martin Gardner Reiffin, Plaintiff,**

v.

**Microsoft Corporation and Harold C Wegner, Defendants.**

**Nos. C–98–0266 VRW, C–00–2221 VRW.**

United States District Court, N.D. California.

March 30, 2001.

---

Martin Gardner Reiffin, Danville, CA, Pro se.

Thomas W. Burt, Redmond, WA, Eric L. Wesenberg, Terrence P. McMahon, William L. Anthony, Erin Farrell, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA, J. Christopher Carraway, Portland, OR, Todd M. Siegel, Klarquist Sparkman Campbell, Portland, OR, for Defendant.

## ORDER

WALKER, District Judge.

In these related cases, plaintiff Martin Gardner Reiffin alleges patent infringement and Sherman Act violations by defendants Microsoft Corporation and Harold C Wegner. Reiffin initially sued Microsoft in 1998 (Reiffin I), claiming that Microsoft has infringed two patents, Patent Nos 5,694,603 ('603 patent) and 5,694,604 ('604 patent). This court granted summary judgment for Microsoft based on an interpretation of 35 USC § 112 ¶ 1 (section 112) that the court has since rescinded. *Reiffin v. Microsoft Corp.*, 48 USPQ2d 1274 (N.D.Cal.1998); *Sun Microsystems, Inc v. Kingston Technology Co*, C–99–3610 (September 5, 2000). Reiffin appealed, and the Federal Circuit reversed and remanded for further proceedings. *Reiffin v. Microsoft Corp.*, 214 F.3d 1342 (Fed.Cir.2000). Currently before the court in Reiffin I are the parties' cross-motions for summary judgment and motions to strike declarations, as well as Reiffin's motion for permanent or preliminary injunction, motion under FRCP 11, declaration under 28 USC § 144 and two expedited motions.

In the related case (Reiffin II), Reiffin filed the first amended complaint (FAC) on April 10, 2000, in the district court for the District of Columbia, alleging patent infringement and Sherman Act violations against Microsoft and an additional defendant, Wegner. The matter was transferred to this district on May 31, 2000, because a majority of the allegations in Reiffin II are based on the proceedings that have taken place in Reiffin I. Before the court in Reiffin II are defendants' motions to dismiss and Reiffin's motion for default judgment and expedited motion for partial summary judgment and preliminary injunction.

I

For over 20 years, Reiffin has been engaged in the business of electronic research, patenting and licensing the inventions arising therefrom. He claims that he owns a patent on a form of computer technology known as multithreading. On September 28, 1982, Reiffin filed a patent application entitled "Computer System with Real–Time Compilation." In the application, Reiffin disclosed a system in which a combination of software and hardware compiles a computer program concurrently with the program's entry into an editor, achieving what is described as "contemporaneous real-time entry and compilation of a source program." In essence, the system utilizes an "interrupt mode of operation" to allow a computer's Central Processing Unit (CPU) to execute two or more tasks with such rapidity that the computer appears to be performing the two or more tasks at once. For example, a computer with multithreading capabilities can run a word processing program that appears to be receiving data (i e, words) at the same time it is spell-checking those words. In actuality, the computer's processor (CPU) is switching from one task to the other by quickly processing keystroke threads, then

spell-check threads, then keystroke threads and so on.

In July 1983, Reiffin published an article in "Microcomputing" magazine entitled "A Real–Time Compiler System," in which he described in detail the idea submitted in his 1982 application. Declaration of John D Vandenberg (Vandenberg Decl), App A (Doc # 137), Exh 1. In 1983, Reiffin filed a patent with the UK patent office (No 2130406), entitled "Computer system with real-time compilation," in which he also described his idea in detail; that application was published by the UK patent office on May 31, 1984. Vandenberg Decl, App A (Doc # 137), Exh 4. Then on November 26, 1986, the UK patent office issued a patent on Reiffin's patent application, publishing verbatim his original 1982 application with the United States Patent Office. Vandenberg Decl, App A (Doc # 137), Exhs 2–3.

Reiffin filed a continuation of the 1982 application in 1990, in which he described the system as a "Preemptive Multithreaded Computer System with Clock Activated Interrupt." Vandenberg Decl, App P (Doc # 140), Exh 9. The 1990 application included additional text and modified claims as compared to the 1982 application. The 1990 application issued as the '603 patent on December 2, 1997. Reiffin filed a continuation of the 1990 application in 1994, which issued as the '604 patent on December 2, 1997, as well. During the lengthy prosecution of these patents, Reiffin amended his claims of the '603 and '604 patents several times. The two patents have the same specification, but differ on their claims; the '603 patent claims a memory product storing multithreaded software, and the '604 patent claims a method of multithreaded operation and a multithreaded system.

Reiffin alleges that several of Microsoft's software applications infringe the '603 and '604 patents, including word

processing programs that check spelling and grammar as text is entered and operating systems such as Windows 98, which control switching of the program threads that are active during normal operation of a personal computer. Reiffin also alleges that Microsoft and Wegner have acted in violation of the Sherman Act. The court now addresses each of the parties' motions in these two related matters.

## II

The court begins with the matters in Reiffin I.

## A

■ Before turning to the parties' substantive motions, the court must address the declaration submitted by Reiffin on January 5, 2001, in which he asserts that the undersigned has manifested an extrajudicial bias and prejudice in favor of Microsoft and against Reiffin. PlDecl (Docs # 239 and 240). Pursuant to 28 USC § 144, Reiffin argues, another judge must be assigned to this case. Id.

■ Indeed, section 144 provides that whenever a party files "a timely and sufficient affidavit" asserting that the judge has a personal bias or prejudice against the party, "such judge shall proceed no further therein." 28 USC § 144. The judge who is the subject of disqualification, however, makes the initial determination as to the legal sufficiency of the declaration. William W Schwarzer, A Wallace Tashima and James M Wagstaffe, *Federal Civil Procedure Before Trial* § 16:213 (Rutter Group Practice Guide 2000) (hereinafter, Schwarzer); see also *United States v. Montecalvo*, 545 F.2d 684, 685 (9th Cir. 1976). To be legally sufficient, the declaration must be both "timely" and state "facts and reasons" establishing the judge's bias. *Montecalvo*, 545 F.2d at 685. The judge is presumed to be qualified, and

thus there is a substantial burden upon the moving party to show that such is not the case. *United States v. Zagari,* 419 F.Supp. 494, 501 (N.D.Cal.1976).

■ The court is doubtful that Reiffin's declaration was submitted in a timely manner given the accusations asserted therein. In any event, the court finds that Reiffin's declaration fails to satisfy the second requirement that it sufficiently state facts and reasons for his belief that a bias or prejudice exists. Assuming the declaration is timely filed, a legally sufficient declaration must meet the following requirements:

(1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable man that a bias exists; and (3) the facts must show the bias is personal, as opposed to judicial, in nature.

*Henderson v. Dept. of Public Safety and Corr.,* 901 F.2d 1288, 1296 (5th Cir.1990); see also Schwarzer § 16:206.1.

The facts put forth in Reiffin's declaration essentially describe this court's analysis of the key legal issues in the case. Such facts, taken as true, would not convince a reasonable man that the undersigned has a bias against Reiffin. At the very least, such facts demonstrate a judicial, rather than personal, inclination to rule against Reiffin on certain issues. An evaluation of the strength or weakness of a party's case, however, does not qualify as the type of personal bias contemplated by section 144. See *Henderson,* 901 F.2d at 1296. Accordingly, the court determines that Reiffin's declaration is not legally sufficient. Reiffin's request to disqualify the undersigned pursuant to section 144 is, therefore, DENIED.

### B

The now turns to Microsoft's motion for summary judgment. Doc # 133. In reviewing a summary judgment motion, the court must determine whether there are genuine disputed issues of material fact, resolving any doubt in favor of the party opposing the motion. The burden of establishing that there are no genuine issues of material fact lies with the moving party. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmoving party would bear the burden of proof at trial, the moving party may meet its burden by pointing out—not by a conclusory statement but by demonstration—the absence of evidence to support the nonmoving party's case. See id at 325–26, 106 S.Ct. 2548. Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

■ Summary judgment is available in patent cases as in other areas of litigation. *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed.Cir.1994). Because there is a presumption that patent examiners have done their jobs correctly, courts presume that patents are valid. *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 24 USPQ2d 1401, 1414 (Fed.Cir.1992). As such, when a party seeks summary judgment that a patent is invalid, that party must establish invalidity by clear and convincing evidence. *Electro Med. Sys. S.A. v. Cooper Life Sciences,* 34 F.3d 1048, 1052 (Fed.Cir.1994).

In support of its motion, Microsoft primarily argues that the '603 and '604 patents—analyzed with a filing date of 1990 instead of 1982—are invalid under 35 USC §§ 102(b) and 103 because of intervening prior art published in the mid–1980s. Assuming 1990 is the appropriate filing date, the issue for the court to decide would be whether Reiffin's patents are invalidated by prior art published at least one year prior to 1990. 35 USC §§ 102(b), 103.

■ Pursuant to 35 USC § 120, however, Reiffin seeks the benefit of the 1982

filing date for the claims of the patents at issue. As a result, analysis of the disclosure in the earlier application is required under section 120. See *Reiffin,* 214 F.3d at 1346; *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1158 (Fed.Cir.1998). For a claim in a later-filed application to be entitled to the filing date of an earlier application, section 120 provides that the earlier application must comply with the written description requirement of section 112. *Tronzo,* 156 F.3d at 1158. Before reaching an analysis of prior art, therefore, the court must determine whether 1990 or 1982 is the appropriate filing date by applying the written description requirement of section 112 to the claims in the patents at issue. See 35 USC § 120.

 Paragraph 1 of section 112 lays out the written description requirement as follows:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 USC § 112 ¶ 1. Determining whether a patent specification complies with the written description requirement presents a question of fact. *SunTiger, Inc. v. Scientific Research Funding Group,* 189 F.3d 1327, 1334 (Fed.Cir.1999). To satisfy the requirement, the application must describe every element of the claimed invention, with all its claimed limitations, in sufficient detail so that one of ordinary skill in the art would recognize that the inventor possessed the claimed invention at the time of filing. See *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1572 (Fed.Cir. 1997); *Vas–Cath Inc v. Mahurkar,* 935 F.2d 1555, 1563 (Fed.Cir.1991); *In re*

*Gosteli,* 872 F.2d 1008, 1012 (Fed.Cir. 1989); see also *Reiffin,* 214 F.3d 1342, 1345–46. While the exact terms employed in the inventor's claims need not appear verbatim in the application, see *Eiselstein v. Frank,* 52 F.3d 1035, 1038 (Fed.Cir. 1995), the application must provide an equivalent description of the claimed invention through use of other descriptive words, "structures, figures, diagrams, formulas, [and so forth.]" *Lockwood,* 107 F.3d at 1572.

The proper filing date for each claim in the '603 and '604 patents will thus depend on whether Reiffin's 1982 application adequately specifies the claim in accordance with the written description requirement. See 35 USC § 120. Claims that are adequately specified therein deserve the benefit of the 1982 filing date. Any remaining claims not supported by the 1982 application would receive the 1990 filing date for the purpose of evaluating the effect of any prior art. See *Reiffin,* 214 F.3d at 1346; *Hyatt v. Boone,* 146 F.3d 1348, 1352 (Fed. Cir.1998); *Tronzo,* 156 F.3d at 1160 (holding that an earlier application failed to meet the written description necessary to support two claims of the patent at issue, and thus denying entitlement to the earlier filing date for those two claims).

Microsoft argues that the court should forego this analysis, asserting that this court has already determined that 1982 was not the proper filing date and that on appeal the Federal Circuit left that portion of the court's ruling "undisturbed." DefBr (Doc # 134) at 7; Def Reply Br (Doc # 154) at 4. Despite Microsoft's urging, however, this court's earlier ruling did not involve the proper section 120 analysis. Instead, the court granted Microsoft's first summary judgment motion after concluding that section 112 itself was violated. *Reiffin,* 48 USPQ2d at 1280. The court was persuaded by a novel interpretation of

the written description requirement as including an "omitted element test" that purportedly prevents "a patent owner from asserting claims that omit elements that were essential to the invention as originally disclosed." Id at 1278. Finding that Reiffin's 1982 application disclosed four essential elements to his invention that were omitted from each of the claims of the '603 and '604 patents, the court concluded that the written description requirement was violated. Id at 1279–80. Based on this perceived violation of section 112 itself, the court ruled that Reiffin's claims were invalidated, thereby mandating summary judgment for Microsoft. Id at 1280.

The Federal Circuit reversed and remanded. *Reiffin*, 214 F.3d at 1342. Without addressing Reiffin's challenge to the omitted element test, a per curiam majority found that this court erred in looking to the 1982 application—rather than the 1990 and 1994 applications on which the patents issued—in determining whether Reiffin's claims were adequately supported by the written descriptions set forth in those patents. Id at 1345. Despite refusing to address the omitted element test, the majority emphasized that "all that is required for compliance with the written description requirement" is whether the claims of the patents at issue "are adequately supported by the written descriptions of the inventions set forth in the specifications of those patents." Id at 1346. In a concurring opinion, Judge Newman explicitly rejected the concept of the omitted element test and stated that this court's earlier interpretation of section 112 was "not a correct statement of the law." Id at 1347. She noted that most patent applicants provide claims that vary in scope and content, "including some elements of a novel device or method, and omitting others." Id. Judge Newman stressed that if the omitted element test were the law, it would require an unworkable layer of litigation and threaten

this "venerable" drafting practice of most inventors. See id at 1347.

In light of Judge Newman's opinion, the undersigned recently concluded in a case involving similar facts that the omitted element test could not be sustained. *Sun Microsystems*, C–99–3610. Accordingly, the issue whether Reiffin's patents are valid must be addressed without applying the omitted element test.

As a preliminary matter, the court recognizes that Reiffin has maintained inconsistent positions in this litigation with respect to which filing date applies. Indeed, in his complaint and in front of this court, Reiffin has asserted that he seeks the benefit of the 1982 filing date. Compl (Doc # 13) ¶¶ 6, 11. In its first summary judgment motion, Microsoft did not contest the validity of that filing date, arguing instead that the omitted element test was decisive. Accordingly, this court looked only to the 1982 application in ruling in Microsoft's favor on the basis of section 112 itself. But on appeal, Reiffin indicated to the Federal Circuit that he "does not need the benefit of the 1982 application's filing date." *Reiffin*, 214 F.3d at 1346. This particular representation likely motivated the Federal Circuit's conclusion that this court erred in looking to the 1982 application. Id at 1345. Certainly, if Reiffin were not seeking the benefit of the 1982 application, then section 120 would not apply and the court could turn directly to evaluating whether prior art from the mid–1980s invalidates the '603 and '604 patents from the perspective of the 1990 and 1994 applications. As the Federal Circuit succinctly stated in this case, "earlier specifications are relevant only when the benefit of an earlier filing date is sought under 35 USC § 120." Id at 1346.

Unfortunately for Microsoft, however, that is exactly what Reiffin now seeks. Under normal circumstances, the court

would admonish Reiffin for arguing inconsistent positions at different stages of the litigation and revert to the court's earlier decision under the law of the case doctrine. See *Mendenhall v. National Transportation Safety Board,* 213 F.3d 464, 469 (9th Cir.2000). As noted above, however, the court has reconsidered the basis of its earlier decision—namely, the omitted element test—and concluded that the earlier decision was in error. *Sun Microsystems,* C–99–3610. Federal Circuit case law, binding upon this court, does not incorporate an omitted element test into section 112. See *Lockwood,* 107 F.3d at 1572; *Vas–Cath,* 935 F.2d at 1563; *In re Gosteli,* 872 F.2d at 1012. The Federal Circuit has made plain that the specification of a patent application "need only reasonably convey to persons skilled in the art that the inventor had possession of the subject matter in question." *Fujikawa v. Wattanasin,* 93 F.3d 1559, 1570 (Fed.Cir.1996). As another district court recently summarized, "[t]he applicant need not describe the subject matter claimed in exact terms." *Monsanto Co. v. Mycogen Plant Science, Inc.,* 61 FSupp2d 133, 188 (D.Del.1999).

So, despite Reiffin's zigzag course, the court cannot look only to the 1990 and 1994 applications in evaluating whether the patents at issue comply with section 112. Instead, the court must determine first whether the claims of the patents are entitled to the 1982 application date pursuant to section 120.

That said, the court notes that, despite Microsoft's further urging, the court did not rely on the omitted element test in making the finding under section 120 in the earlier ruling. Rather, that ruling was based on the conclusion that section 112 itself, incorporating the omitted element test, was violated. As the Federal Circuit noted in this case, however, "claims to subject matter in a later-filed application not supported by an ancestor application in

terms of § 112 ¶ 1 *are not invalidated;* they simply do not receive the benefit of the earlier application's filing date." *Reiffin,* 214 F.3d at 1346 (emphasis added). The appellate court did not address the issue whether the claims of the patents in suit are disclosed in the 1982 application. *Reiffin,* 214 F.3d at 1346 ("We do not undertake this determination on the undeveloped record before us."). On remand, therefore, this court must do so.

In this regard, Reiffin asserts in his opposition that 73 of the 77 claims on the '603 patent are disclosed by the 1982 application, implying that the proper filing date for those claims is 1982. PlBr (Doc # 144) at 3. Reiffin fails to address the remaining four claims of the '603 patent, and fails to address entirely the 35 claims of the '604 patent. But Microsoft, not Reiffin, has the burden of establishing with clear and convincing evidence as part of its prima facie case of patent invalidity that those claims are not adequately specified by the 1982 application. *Ralston Purina Co. v. Far–Mar–Co, Inc.,* 772 F.2d 1570, 1573–74 (Fed.Cir.1985) ("A party asserting invalidity based on 35 U.S.C. § 112 bears no less a burden and no fewer responsibilities than any other patent challenger."). Hence, for Microsoft to win on summary judgment, it must first establish with clear and convincing evidence that *none* of the claims of the '603 and '604 patents are adequately specified in the 1982 application under section 112. Microsoft has not met this burden.

Microsoft's briefs focus almost entirely on whether the patents at issue are invalidated by prior art published during the mid–1980's pursuant to sections 102(b) and 103. Microsoft cites three cases for the proposition that an earlier "published patent application (such as Mr. Reiffin's 1982 application) may invalidate the very patent that it eventually led to, even though that

application did not 'support' that patent as required by Section 112 ¶ 1." DefBr (Doc # 134) at 11.

For example, Microsoft relies on *Tronzo*, 156 F.3d 1154, in which the Federal Circuit overruled a district court's finding that two claims were not invalid. Id at 1160. The *Tronzo* court held that the claims were invalidated by intervening prior art (specifically, a patent application previously published in the United Kingdom). Id. The *Tronzo* court, however, only reached the issue about intervening prior art after *first* concluding that "the specification of the [previously published patent] fails to meet the written description necessary to support [the patents at issue]," and thus the claims "are not entitled to the filing date of the parent application." Id.

As noted, Microsoft's briefs skip this important first step by not addressing whether the specifications in Reiffin's 1982 application adequately support the claims of the '603 and '604 patents. At oral argument on this motion, Microsoft relied predominantly on admissions to the court by Reiffin regarding his patent claims as the only support for their argument that none of the claims are adequately specified by the 1982 application. Microsoft must point to more than just the opposing party's own somewhat incoherent statements. Accordingly, Microsoft has not met its burden of demonstrating by clear and convincing evidence that the 1982 application does not adequately specify the '603 and '604 patents. The court thus concludes that a triable issue of fact exists on this issue. In light of this conclusion, the court does not reach Microsoft's arguments that Reiffin's asserted patents are invalid under sections 102(b) and 103.

For the foregoing reasons, Microsoft's motion for summary judgment is DENIED. This order does not preclude a renewed motion for summary judgment by Microsoft to demonstrate that the 1982 application does not adequately specify Reiffin's two patents so that an analysis of invalidity under sections 102(b) and 103 based on the 1990 and 1994 applications may take place. Likewise, Microsoft is not precluded from revisiting the issue after a *Markman* hearing in the matter.

### C

The court next addresses Reiffin's counter-motion for partial summary judgment and preliminary or permanent injunction (Docs # 145–1 and 145–2), as well as his second motion for partial summary judgment and preliminary or permanent injunction (Docs # 167–1, 167–2 and 167–3).

In both motions, Reiffin asks the court to determine as a matter of law that: (1) particular claims of the '603 and '604 patents are not invalid and (2) particular claims of the patents are directly infringed and/or contributorily infringed by Microsoft's Windows 98 or Windows 98 Second Edition. See Pl Counter–Motion (Doc # 145) at 1–2; Pl Second Motion (Doc # 167) at 2. Reiffin also seeks a permanent or preliminary injunction in his cross-motion enjoining Microsoft from including the "automatic spelling (or grammar) checking as you type" feature in Microsoft Word or other software, and he seeks a permanent or preliminary injunction in both motions enjoining Microsoft from continuing to manufacture or sell Windows 98 and Windows 98 Second Edition. See id. For the reasons stated below, both motions are DENIED.

### 1

The court begins with Reiffin's partial summary judgment motions. In reviewing a summary judgment motion, the court must determine whether there are genuine disputed issues of material fact, resolving any doubt in favor of the party opposing

the motion. The burden of establishing that there are no genuine issues of material fact lies with the moving party. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

For the reasons set forth above, the court has determined that there are triable issues of fact on the issue of patent invalidity. Specifically, before the court can evaluate whether certain claims of Reiffin's patents are valid or invalid, the appropriate filing date must be established because Reiffin is seeking the benefit of the 1982 application date pursuant to section 120. Hence, it must first be determined whether the 1982 application complies with the written description requirement of section 112. See *Lockwood,* 107 F.3d at 1572.

This analysis presents a question of fact. *SunTiger,* 189 F.3d at 1334 (citing *Tronzo,* 156 F.3d at 1158). Reiffin, however, fails to point out an absence of evidence to support Microsoft's necessary contention that the 1982 application does not adequately specify *each* claim for which he seeks summary judgment. The incomplete claim charts submitted by Reiffin are not clear enough for the court to determine as a matter of law that such claims are adequately specified by the 1982 application. Accordingly, Reiffin is not entitled to summary judgment on the validity of these claims, and so to the extent the motions address the issue of validity, they are DENIED.

2

▇▇▇▇ Reiffin also seeks summary judgment that, as a matter of law, certain claims of the '603 and '604 patents are directly or contributorily infringed by (presumably, the manufacturing, use or sale of) Microsoft's products. The Federal Circuit states that:

A determination of infringement requires a two-step analysis. First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.

*Elekta Instrument SA v. OUR Scientific International, Inc.,* 214 F.3d 1302, 1306 (Fed.Cir.2000) (citing *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1476 (Fed.Cir.1998)). "In order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1199 (Fed.Cir.1994). Although claim construction is an issue of law, see *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970–71 (Fed.Cir. 1995) (en banc), the determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. See *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed.Cir.1998).

Reiffin has failed to meet his initial burden under FRCP 56. First, Reiffin must provide a claim construction statement pursuant to Civil LR 16–10(a).[1] The Federal Circuit has also made clear that the claims at issue must first be construed before such claims can be compared with the purportedly infringing products. See *SRI International v. Matsushita Electric Corp.,* 775 F.2d 1107, 1118 (Fed.Cir.1985). But Reiffin's two motions do not include adequate claim construction statements. Instead, the motions regarding the issue of infringement are based mostly on conclusory statements that the particular claims are the same as the descriptions of Microsoft's products. The court finds these submissions to be insufficient.

---

1. All references are to the local rules as in effect until December 31, 2000. The local rules were amended effective January 1, 2001.

Second, Reiffin has failed to point to evidence that shows the presence of every element or its substantial equivalent from the construed claims is found in Microsoft's software products. See *Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1337 (Fed.Cir.1998). Such failure also violates Civil LR 16–9(a), which requires Reiffin to submit a "service and content" claim chart that contains, among other information, a description of where "each element of each infringed claim is found within each apparatus, product, device, process, method, act or other instrumentality." Civil LR 16–9(a)(4). Indeed, Reiffin has disregarded a majority of the claim elements for which he seeks summary judgment. Consequently, Reiffin has not established that there is no genuine issue of material fact on the issue of infringement and so summary judgment on this question must be DENIED.

3

■ Turning to Reiffin's motions for preliminary or permanent injunction: To prevail on a motion for preliminary injunction, Reiffin must satisfy one of two tests available in the Ninth Circuit. Under the traditional test, Reiffin must demonstrate: (1) irreparable injury if the relief is denied; (2) probability of success on the merits; (3) the balance of potential harm favors the moving party and (4) the public interest favors the injunction. *International Jensen, Inc. v. Metrosound USA Inc.*, 4 F.3d 819, 822 (9th Cir.1993). Under the alternative test, Reiffin can prevail "by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury if the relief is not granted; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." *Id.* Reiffin appears to contend that he is entitled to a preliminary injunction under the traditional test. The court disagrees.

■ First, Reiffin neglects to discuss in both of his motions the probability of succeeding on the merits. Microsoft has raised legitimate concerns that Reiffin's patents may be invalidated by prior art; Reiffin has not adequately addressed these arguments. And even though there are triable issues of fact related to the invalidity of Reiffin's patents, he has presented no evidence at all to support the contention that the claims are infringed. Because Reiffin must make a "clear showing" that his patents are valid and infringed, see *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed.Cir.1985), at the very least he has failed to make such a showing on the issue of infringement.

■ Second, Reiffin asserts that he is entitled to a presumption of irreparable injury. He is only entitled to that presumption after making a "clear showing" that he is likely to succeed on the merits. See *id.* As stated, he clearly has not made such a showing. Moreover, several additional factors suggest that the likelihood of irreparable harm is low here. Given the fact that Reiffin does not manufacture, sell or license any products based on his patents, he cannot point to any specific commercial interest that needs equitable protection. See *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1556 (Fed. Cir.1995) ("[T]he lack of commercial activity by the patentee is a significant factor in the calculus"). Also, monetary damages would suffice as adequate compensation should Reiffin prevail at trial. Indeed, Reiffin originally offered to sell the patents; evidence that the patentee is willing to forego his patent rights for compensation militates against a finding of irreparable harm. See *id* at 1557. Moreover, the financial strength of Microsoft shows that it would be capable of responding to damages for infringement in the event that the

outcome of trial requires it. As a result of the foregoing factors, the court finds the likelihood of harm to Reiffin to be low.

Finally, the court recognizes that Microsoft's software products are widely distributed and relied upon by many members of society. Granting an injunction under these circumstances (particularly given the breadth of products for which Reiffin seeks an injunction) would cause great hardship to Microsoft and the public interest. The balance of hardships, therefore, tips strongly in Microsoft's favor.

For these reasons, Reiffin has not established that a preliminary (or permanent) injunction should issue in his favor. The court thus DENIES both of Reiffin's motions on the issue.

### D

▇ Also before the court is Reiffin's motion under FRCP 11(b)(2). Doc # 163. The court turns to that motion now.

In relevant part, FRCP 11 provides that the court can impose appropriate sanctions on parties that have presented to the court a written motion falsely asserting:

> claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

FRCP 11(b)(2).

Reiffin contends that Microsoft's motion for summary judgment was "frivolous because defendant knew or should have known that its motion was based upon fictitious alleged 'law' which violates principles of patent law *** that *** are known to every patent professional." PlBr (Doc # 163) at 1. Reiffin requests that the court issue an order (1) striking Microsoft's motion for summary judgment, (2) establishing as the "law of the case" that Microsoft's legal points are contrary to the law and (3) awarding Reiffin attorney fees and

costs related to opposing Microsoft's summary judgment motion. For the reasons stated below, Reiffin's motion is DENIED.

▇ FRCP 11(b)(2) is only violated when the claim is not warranted by existing law or a nonfrivolous argument for the change of that law. If, "judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time the position is adopted, then sanctions should not be imposed." *Larez v. Holcomb*, 16 F.3d 1513, 1522 (9th Cir. 1994) (quoting *Golden Eagle Dist. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir.1986)).

In the case at bar, this court initially granted summary judgment to Microsoft, but the decision was later reversed and remanded by the Federal Circuit. As discussed above, the reversal was predominantly based on conflicting interpretations of a developing area of the law, specifically, the written description requirement in section 112. When judged by an objective standard at the time the motion was filed, Microsoft plainly possessed a reasonable basis in both law and fact for seeking summary judgment based on their section 112 argument.

Moreover, "[l]itigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir.1987). Reiffin has put forth no legitimate argument for the court to grant sanctions, but instead relies solely on the fact that this court's earlier decision to grant Microsoft summary judgment was subsequently reversed. FRCP 11 is inapplicable in these circumstances. Indeed, the court admonishes Reiffin that he may himself be subject to FRCP 11 scrutiny for the repeated filings that he has submitted to the court. See *Maciosek v. Blue Cross & Blue Shield*, 930 F.2d 536, 542 (7th

Cir.1991) (finding that FRCP 11 sanctions can be awarded when parties assert the same or similar claims in lawsuits raising claims previously decided in other cases).

E

The next set of motions related to Reiffin I are the parties' motions to strike declarations filed in support of their various motions. For the reasons set forth below, Microsoft's expedited motion to strike Reiffin's tenth, eleventh, twelfth, thirteenth and fourteenth declarations (Doc # 172) is GRANTED IN PART and DENIED IN PART. Likewise, Microsoft's motion to strike Reiffin's unauthorized filings (Doc # 237) is GRANTED IN PART and DENIED IN PART. Reiffin's motion in limine (Doc # 169–1) and motion to strike declarations (Docs # 169–2 and 188) is DENIED.

Taken together, Microsoft's two motions on this issue essentially request that Reiffin's tenth through eighteenth and twenty-first through twenty-third declarations be stricken from the record. Similarly, Microsoft also moves to have Reiffin's unwarranted memorandum on the law of the case and reply on the law of the case stricken. Microsoft points out that a majority of these filings violate the local rules. Most notably, Microsoft contends that a majority of these documents were filed in violation of Civil LR 7–3(e), which mandates that "once a reply is filed, no additional memoranda, papers or letters shall be filed without prior court approval."

Microsoft filed its reply brief in support of summary judgment on August 3, 2000, and Reiffin's reply brief in support of his counter-motion for summary judgment was due on August 31, 2000. Accordingly, any declarations filed without first seeking leave of court subsequent to these dates purportedly in support of Reiffin's position on the two motions violate Civil LR 7–3(e). All of Reiffin's declarations were filed

without leave of court. The thirteenth and fourteenth declarations were filed in support of Reiffin's opposition to Microsoft's motion for summary judgment, but were filed subsequent to August 3, 2000. Accordingly, the court hereby strikes from the record these two declarations (Docs # 164 and 168). The eighteenth, twenty-first, twenty-second and twenty-third declarations as well as Reiffin's briefs relating to the law of the case were filed subsequent to both of the aforementioned dates, and thus they likewise violate Civil LR 7–3(e). These four declarations and two briefs are therefore also stricken from the record (Docs # 186, # 210, # 218, # 233, # 235, # 229, # 232 and # 234). In light of this ruling, Microsoft's opposition to Reiffin's memorandum on the law of the case is likewise stricken from the record (Doc # 230). The tenth, eleventh, and twelfth declarations in support of Reiffin's opposition to Microsoft's motion for summary judgment, however, were filed on or before August 3, 2000. Similarly, the fifteenth and sixteenth declarations theoretically in support of Reiffin's counter-motions for summary judgment were filed on or before August 31, 2000. Hence, these five declarations are not stricken from the record (Docs # 146, # 149, # 157, # 170 and # 171).

Microsoft further contends that with respect to all of Reiffin's declarations at issue here, they violate FRCP 56(e) and Civil LR 7–5(b) for including arguments, rather than limited to facts based on personal knowledge. The court has reviewed these voluminous declarations and agrees that a majority of the statements in the declarations are duplicative of arguments found in Reiffin's briefs. The court also notes, however, that some of the statements appear to be based on Reiffin's personal knowledge. Consequently, the court has considered only those portions of the declarations that are clearly based on the

personal knowledge of Reiffin, and the remaining portions are hereby stricken.

■■■ The court now addresses Reiffin's motion to strike the five declarations of Microsoft's expert, Dr. Sabin Head. Reiffin's primary argument appears to be that Reiffin disagrees with the statements made in these declarations. But Reiffin's disagreement with a witness' testimony affords no ground for a motion to strike. In light of the court's broad discretion to receive expert testimony, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), this principle applies especially to such testimony. Accordingly, Reiffin's motion is DENIED.

### F

The final two motions related to Reiffin I are two expedited motions filed by Reiffin. In the first motion, Reiffin seeks partial summary judgment denying the section 112 defense and confirming the 1982 filing date. Doc # 212. Because an expedited motion is not authorized by the local rules for the issue addressed by the motion, the court declines to consider it. See Civil LR 7–10. Accordingly, Reiffin's expedited motion is DENIED.

In the second motion, Reiffin asks the court to compel discovery pursuant to FRCP 37. Docs # 225–1, 225–2 and 226. Reiffin certifies that the discovery dispute at issue could not be resolved by a conference with opposing counsel. Under these circumstances, the next appropriate step for Reiffin to follow under the local rules would have been to make a request to schedule a conference in the court's chambers with all affected parties. Civil LR 37–1(c). Because Reiffin's second expedited motion skipped this important step, the relief sought by Reiffin is premature. Accordingly, the motion is DENIED.

### III

■■■ The court next considers the parties' motions related to Reiffin II. Before analyzing defendants' motions to dismiss, the court must address Reiffin's motions for judgment by default pursuant to FRCP 55 (Docs # 29 and 49).

### A

Reiffin filed the FAC for Reiffin II in the DC District on April 5, 2000. On April 21, 2000, Microsoft timely moved to dismiss or, in the alternative, for a stay or transfer of venue. Wegner timely moved for the same relief on April 24, 2000. On May 31, 2000, the DC district court granted these motions for transfer of venue due to this court's familiarity with the parties, issues and claims relevant to the dispute. In light of the decision to transfer, all other pending motions were denied as moot. The DC district court did not set a new time for defendants to respond. Microsoft and Wegner filed motions to dismiss in this court on July 18 and August 4, 2000, respectively.

■■■ Pursuant to FRCP 55(a), default judgment is appropriate when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Default may be appropriate when defendants have not taken a single action in the lawsuit. *Bryant v. City of Marianna*, 532 F.Supp. 133, 137 (N.D.Fla.1982). Default judgments, however, are generally disfavored by the law. Schwarzer § 6:11. "Whenever it is reasonably possible, cases should be decided upon their merits." *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir.1985). When defendants have indicated an intent to defend the action, default should not be entered. *Wickstrom v. Ebert*, 101 F.R.D. 26, 33 (E.D.Wis.1984). Moreover, a defendant may file a FRCP 12(b) motion any time

before a responsive pleading (i e, an answer) is filed. *Aetna Life Insurance, Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir.1988).

Defendants filed motions in the DC District, indicating an intent to defend the action. Likewise, upon transfer to this court, defendants further indicated an intent to defend the action by filing motions to dismiss before filing a responsive pleading and before Reiffin filed his application for entry of default. For these reasons, Reiffin's motions for default judgment against defendants (Docs # 29 and 49) are DENIED.

### B

■ With this matter resolved, the court can now consider the motions to dismiss filed by defendants Microsoft and Wegner. Docs # 12, 17 and 22. The following additional facts are derived from Reiffin's FAC in this action. See Declaration of Eric L Wesenberg (Doc # 16), Exh B(FAC). On a motion to dismiss, the court assumes the truth of the facts alleged in the complaint. *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991).

In December 1997, Reiffin attempted to sell and/or license the '603 and '604 patents to eleven major computer companies such as IBM, Sun Microsystems, Apple and Intel. FAC ¶ 23. Microsoft allegedly obtained at least one copy of Reiffin's letters indicating his attempt to sell the patents to Microsoft's competitors. Id ¶ 24. Reiffin pleads that Microsoft knew that it had no valid defense to Reiffin's claims of patent infringement in Reiffin I, and thus Microsoft proceeded to argue to this court and the Federal Circuit a "frivolous" motion for summary judgment, as well as "sham" defenses in that matter. Id ¶¶ 81–82, 84–87. Furthermore, Reiffin maintains that Microsoft engaged in the actions enumerated in District Judge Thomas Penfield

Jackson's findings of fact in the government's case against Microsoft, making it clear to "Reiffin's potential customers" that "Microsoft has the motive, power and disposition to coerce, intimidate and punish any manufacturer who would threaten Microsoft's monopoly." Id ¶¶ 26, 27.

Microsoft then "invented" the term "submarine patent," which it communicated to this court in the proceedings for Reiffin I. Id ¶¶ 88, 90. Wegner referred to Reiffin's patents (in his role as a patent law professor) as "submarine patent[s]," "particularly evil" and that they "should not be tolerated." Id ¶¶ 8, 95, 97. Finally, Microsoft continues to manufacture and sell software products such as Windows 2000 that allegedly infringe on Reiffin's patents. Id ¶¶ 113–114.

Reiffin's allegations can be summarized as follows: (1) Microsoft's abuses of monopoly power (outlined by Judge Jackson's findings of fact) carried out on Reiffin's potential customers combined with Microsoft's efforts at defending against Reiffin's claims of patent infringement in Reiffin I amount to a violation of sections 1 and 2 of the Sherman Act; (2) Microsoft and Wagner's conspiracy to publish "libel" about Reiffin's patents in order to discredit such patents violates the Sherman Act and (3) Microsoft's continuing production of software applications such as Windows 2000 infringes Reiffin's '603 and '604 patents.

■ In a FRCP 12(b)(6) motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. Dismissal is appropriate when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

1

The first two categories of Reiffin's claims against defendants implicate the Sherman Act. Preliminarily, the court notes that Microsoft merely defended itself against the claims of patent infringement in Reiffin I and Wegner simply referred to Reiffin's patents in his role as a patent law professor. Numerous wholly untenable assumptions must be made before the court could determine that these actions amount to anticompetitive conduct. See *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (finding that "judges, advocates, and witnesses" enjoy absolute immunity from private damages for actions taking place in the judicial process); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (noting that the antitrust laws were not meant to discourage citizens from approaching the courts); *Heart Disease Research Foundation v. General Motors Corp.,* 463 F.2d 98, 100 (1972) ("[A] bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal.").

█ Aside from the fact that Reiffin's allegations of anticompetitive conduct are problematic at best, the Supreme Court has made plain that a plaintiff claiming federal antitrust violations must plead and prove "more than injury causally linked to an illegal presence in the market." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Because the antitrust laws "were enacted for 'the protection of *competition,* not *competitors,*'" the plaintiff must also show an anticompetitive impact on the market. Id at 488, 97 S.Ct. 690 (emphasis in original) (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)). Thus, Reiffin must plead and prove "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990).

█ To survive a motion to dismiss in an antitrust case, therefore, a plaintiff must do more than simply paraphrase the language of the federal antitrust laws or state conclusory terms that a defendant has violated those laws. *Dial A Car, Inc. v. Transp., Inc.,* 884 F.Supp. 584, 588 (D.D.C.1995). "[I]f he claims an antitrust violation, but the facts he narrates do not at least outline or adumbrate such a violation, he will get nowhere merely by dressing them up in the language of antitrust." *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984). In the case at bar, Reiffin's allegations masquerade as antitrust violations.

After carefully considering and analyzing the FAC, the court discerns that Reiffin essentially alleges two categories of antitrust injury caused by the actions of defendants: (1) Reiffin's potential customers (Microsoft's competitors) were discouraged from purchasing his '603 and '604 patents and, as a result, "Reiffin's patents will not be used to restore competition to the personal computer software industry" and (2) Reiffin was driven "out of the business of marketing his patented inventions." FAC ¶¶ 6–8, 23, 84, 88; see also Pl.Opp.Br. (Doc # 24) at 5, ¶¶ 10–11.

Reiffin plainly does not make a showing of antitrust injury in either scenario. First, even assuming the truth of Reiffin's allegation that the actions of defendants discouraged his potential customers from purchasing the patents, a discernible antitrust injury could not exist. If Reiffin had been successful in selling his patents (presumably, without the alleged interference of defendants), the monopoly rights con-

ferred upon Reiffin by the patents would be transferred to the new patent-owners. The antitrust laws, however, are concerned with consumer welfare and not with regulating the efforts of competing parties to gain and utilize monopoly patent rights. See, e g, *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 267 (7th Cir.1984).

In *Riegel Textile,* the plaintiff sued under the antitrust laws "not because [the defendant was] gouging the consumer by charging a monopoly price," but because the defendant had successfully obtained a patent also sought by plaintiff. See id. The court found that a decision in favor of the plaintiff on antitrust grounds would not benefit consumers in any way. Id. The court noted that "[i]t makes no difference that [the plaintiff] *** says that if it owned the patent it would license production to several manufacturers" because even though there would be more manufacturers, "there would not be more competition if the 'competitors' were constrained by the terms of the patent license." Id.

Similarly, Reiffin complains that the first category of injury here is the fact that his potential customers were discouraged from purchasing the patents. Even if one of those companies was able to purchase Reiffin's patents, consumers would not be better off; consumers would simply be subjected to the monopoly patent rights of a different party. Thus, the allegation that these companies were discouraged from purchasing the patents is not an antitrust injury for which the law provides a remedy.

The second category of Reiffin's alleged injury is that he was driven out of business by the actions of defendants. Assuming the truth of this allegation, this is not the type of injury protected by antitrust laws. See *Brunswick,* 429 U.S. at 488, 97 S.Ct. 690. The Sherman Act was enacted "to preserve the health of the competitive process *** rather than to promote the welfare of particular competitors." *Riegel Textile,* 752 F.2d at 266. An obvious side effect of preserving this competitive process is that businesses unable to compete go out of business. This signifies the vigor of competition, not its absence. Such an outcome by itself, however, is not actionable under the Sherman Act. Id at 267. Because the facts alleged here would not support a showing that defendants not only hurt Reiffin's business, but also that "the injury is the sort of thing the antitrust laws seek to discourage," id at 268, Reiffin's Sherman Act claims must fail.

2

Reiffin also alleges that Microsoft's software applications infringe his '603 and '604 patents. The court notes a striking similarity between the claims in the FAC here and the allegations in the related matter, Reiffin I. The only difference discernible by the court are that in the more recent action, Reiffin has alleged that additional software products (i e, Windows 2000, Word 2000, Excel 2000, Access 2000, Office 2000 and Publisher 2000) are infringing his patents. As the court has denied Microsoft's motion for summary judgment in Reiffin I, that case will move forward and the parties will have the opportunity to address the patent issues in the case.

The court therefore GRANTS the motions to dismiss filed by Microsoft and Wegner (Docs # 12, 17 and 22) on both claims, but grants Reiffin 30 days from the date of this order to amend his complaint in Reiffin I to include the aforementioned products not already alleged in that action. Reiffin is reminded that such claims apply only against Microsoft; each of the claims against Wegner are dismissed with prejudice.

C

Because the court has granted defendants' motions to dismiss, Reiffin's expe-

dited motion for summary judgment and preliminary injunction (Docs 36–1 and 36–2) is rendered moot. Accordingly, this motion is likewise DENIED.

## IV

In light of the number of motions addressed by this order, the court summarizes the rulings in each case as follows:

1. Reiffin I (C–98–0266):

- Microsoft's motion for summary judgment (Doc # 133) is DENIED.

- Reiffin's counter-motion for partial summary judgment (Doc # 145–1) is DENIED.

- Reiffin's motion for preliminary or permanent injunction (Doc # 145–2) is DENIED.

- Reiffin's second motion for partial summary judgment and preliminary or permanent injunction (Docs # 167–1, 167–2 and 167–3) is DENIED.

- Reiffin's motion under FRCP 11(b)(2) (Doc # 163) is DENIED.

- Microsoft's expedited motion to strike Reiffin's tenth, eleventh, twelfth, thirteenth and fourteenth declarations (Doc # 172) is GRANTED IN PART and DENIED IN PART.

- Microsoft's motion to strike Reiffin's unauthorized filings (Doc # 237) is GRANTED IN PART and DENIED IN PART.

- Reiffin's motion in limine (Doc # 169–1) and motion to strike declarations (Docs # 169–2 and 188) is DENIED.

- Reiffin' expedited motion for partial summary judgment (Doc # 212) is DENIED.

- Reiffin's expedited motion to compel discovery (Docs # 225–1, 225–2 and 226) is DENIED.

2. Reiffin II (C–00–2221):

- Reiffin's motions for judgment by default (Docs # 29 and 49) are DENIED.

- Microsoft's motion to dismiss (Docs # 12 and 17) is GRANTED.

- Wegner's motion to dismiss (Doc # 22) is GRANTED.

- Reiffin's expedited motion for summary judgment and preliminary injunction (Docs 36–1 and 36–2) is DENIED.

In light of these rulings, the following motions are likewise DENIED as moot: Docs # 147, 153, 180, 201 and 204 in Reiffin I and Docs # 15, 52 and 55 in Reiffin II. The clerk is directed to terminate all of the aforementioned motions.

IT IS SO ORDERED.